COMMONWEALTH vs. WILLIAM H. DOUCETTE, JR.

Middlesex. December 6, 1983. — March 14, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Evidence, Admissions and confessions. Practice, Criminal,* Instructions to jury, Assistance of counsel, Presumptions and burden of proof. *Malice. Self-Defense.*

Evidence at the hearing on a motion to suppress statements made by a defendant to police officers warranted a finding that the defendant had made a knowing and voluntary waiver of his Miranda rights, despite some evidence that the defendant may have been drinking or may have taken drugs some time before making the statement, and despite the defendant's claim that a police officer had coerced the defendant into making the statements through the officer's intimation that the defendant was a liar and the officer's suggestion that the defendant unburden himself. [447-450]

Although the judge at the trial of a murder case used the terms "presumption" and "if you find" in instructing the jury on malice and intent, the instructions, considered as a whole, did not shift the burden of disproving malice to the defendant. [450-452]

Where the judge at the trial of a murder case, in his instructions to the jury, repeatedly placed the burden of proof beyond a reasonable doubt on the Commonwealth, and adequately defined reasonable provocation, explaining that it negated a finding of malice, he was not required to state expressly that the Commonwealth had the burden of proving the absence of provocation. [452-453]

At the trial of a murder case, the judge's instructions to the jury on self-defense and extreme atrocity or cruelty did not create a substantial risk of a miscarriage of justice. [453-454]

This court declined to exercise its power under G. L. c. 278, § 33E, to reduce a first degree murder conviction to murder in the second degree based on the judge's failure to instruct the jury that evidence of the defendant's use of drugs or alcohol should be considered when determining the defendant's capacity to commit premeditated murder or murder with extreme atrocity or cruelty, where the defendant had not requested such an instruction, where every witness who had come in contact with the defendant in the three hours following the killing found him to be normal, and where the nature and number of the knife wounds inflicted on the victim was inconsistent with a claim of debilitating intoxication. [455-456]

At a murder trial, the judge's instructions to the jury sufficiently apprised them that the Commonwealth must prove beyond reasonable doubt that the defendant's statements to police were voluntarily made, and that they should consider evidence of the defendant's intoxication in determining voluntariness. [456-457]

There was no merit to a claim made by a defendant convicted of first degree murder that he was denied effective assistance of counsel by trial counsel's failure to object to portions of the charge to the jury or to request further instructions, by his failure to request an instruction on voluntary intoxication, by his failure to obtain expert testimony on the effects of drugs and alcohol, by his failure to investigate an insanity defense, and by his cross-examination of a witness during a hearing on a motion to suppress statements made by the defendant. [457-460]

INDICTMENT found and returned in the Superior Court Department on March 9, 1979.

The case was tried before *Adams,* J.

*Edward Berkin* for the defendant.

*Margot Botsford,* Assistant District Attorney (*Susan S. Beck,* Assistant District Attorney, with her) for the Commonwealth.

NOLAN, J. On September 10, 1979, a jury convicted the defendant, William H. Doucette, Jr., of murder in the first degree. The trial judge sentenced the defendant to the Massachusetts Correctional Institution, Walpole, for a term of life. Defense counsel immediately filed a claim of appeal.

The defendant claims error in the trial judge's denial of his motion to suppress statements made to the police and the judge's instructions to the jury. He further asserts that he was denied the effective assistance of counsel. These errors, he contends, require reversal of his conviction. In the alternative he requests that we direct the entry of a verdict of guilty of murder in the second degree or order a new trial pursuant to our authority under G. L. c. 278, § 33E. For the reasons stated below, we find no error in the trial judge's admission of the defendant's statements or his instructions to the jury and no denial of effective assistance of counsel. Nor does this case present an appropriate occasion for the exercise of our powers under G. L. c. 278, § 33E.

We briefly summarize the events leading up to the defendant's arrest. We shall describe the facts in greater detail as necessary in our discussion of the various arguments raised by the defendant.

In the early morning hours of February 6, 1979, the defendant and the victim, Ronald Landry, drove to a motel in Malden, Massachusetts. The defendant testified that he had been drinking, had ingested several seconals and therefore was incoherent during the drive to the motel. This testimony was partially corroborated by the testimony of the defendant's girl friend Denise Kaminski, and friend, John Freda. The defendant stabbed and killed the victim in a motel room, allegedly due to an attempted homosexual attack.

Dr. George Katsas, a pathologist who conducted the autopsy, testified that the victim had suffered numerous stab wounds. One wound in the right chest area penetrated three to four inches inside the body, cutting through the chest bone and into the heart. In the doctor's opinion, this wound was inflicted with considerable force. The second chest wound, on the victim's left side, penetrated one to one and one-half inches inside the body and cut through a rib bone. The victim's throat was slashed from the midline front almost to the left ear. The victim was also stabbed in the lower back area. This wound was three inches long and penetrated into the body three inches. Superficial wounds were located on the front and back of the victim's right hand and just below his right knee.

Immediately following the stabbing, the defendant concealed himself on a nearby porch about 100 yards away from the motel. While on the porch he changed his coat by putting his hooded sweatshirt over his blue baracuda jacket, which was spattered with blood.

Some time later, the defendant went across the street to a gas station and conversed with the attendant on duty. The defendant testified that he told the attendant not to be afraid, that he was not there to hurt him, that he needed some help, and that he thought he had killed a man across the street.

The attendant testified that he noticed the defendant had blood on his face, shoes, and clothing. The defendant handed

the attendant a knife and told him to put it somewhere. After the attendant inquired about the murder across the street, the defendant recounted that he had lured the victim to the motel by promising that they would meet some girls there. The defendant then said he stabbed the victim because he had beaten up his girl friend's brother. When the victim started calling for help, he slit the victim's throat. The attendant further testified that aside from the defendant's shivering from the cold when he first arrived, he did not notice anything unusual about his manner of speech or walk.

The defendant left the gas station in a taxi and proceeded to the North End of Boston. En route he asked the driver to stop for cigarettes. After purchasing the cigarettes, he was apprehended by the police. After removing a four inch buck knife from the defendant's pocket during a pat down, Officer David Marsters, the officer who escorted the defendant back to the motel, informed him that a murder had just been committed and asked the defendant if he would come back to the motel for some questioning. The defendant agreed. The taxi driver and Officer Marsters both testified that they had no trouble understanding the defendant.

When the defendant entered the motel, Detective Thomas Spartichino, the chief investigating officer, inquired about the substance on his clothing. The defendant replied that he had spattered his clothing with lobster sauce while working at a fish market. Detective Spartichino smelled alcohol on the defendant's breath, but testified that the defendant appeared perfectly normal. Detective Spartichino advised the defendant of his Miranda rights at approximately 5:30 A.M. According to Spartichino, the defendant stated that he understood his rights and wanted to talk.

Initially, the defendant told the police that while at a bar with a girl friend, a black pimp explained the life of a prostitute to the girl. An altercation ensued, and the defendant stated that he took a knife away from the pimp and stabbed him with it. Spartichino and Detective Lieutenant John Gearty, who was also present during the interrogation, indicated to the defendant that they did not believe his story. Spartichino explained that his

alibi could easily be disproved and that the victim's car, which was being processed, would reveal the defendant's fingerprints.

The defendant became emotional and was either crying or on the verge of tears. Detective Spartichino concluded with, "Why don't you unburden yourself?" "I feel you want to tell us something?" The defendant then blurted out that the victim tried to rape him while holding a knife to his throat. At this point, Spartichino reminded the defendant of his rights, but the defendant stated that he wanted to tell the story. When Spartichino asked the defendant whether he did engage in sexual intercourse with the victim, the defendant refused to speak any further without the presence of an attorney. All interrogation ceased at this time.

Paul Conley, a chemist who worked for the Massachusetts Department of Public Safety, testified that he found seminal fluid in the seat area of the victim's undershorts. Dr. Katsas also testified that sperm was found in the victim's rectum, mouth, and throat. He could not give an absolutely certain opinion, but he testified that the sperm located in the mouth, having not degenerated, had been present there for no more than an hour or two. He could give no opinion as to the sperm located in the rectal area, but did state that the presence of the sperm in the rectum would depend mainly on the frequency of the victim's defecation.

1. *Motions to suppress statements.* The defendant first argues that the judge erred in admitting in evidence his statements to the police because the Commonwealth failed to prove a valid waiver of Miranda rights and the voluntariness of the defendant's statements. For these reasons, he contends that we should grant him a new trial. We disagree.

In reviewing a judge's determination that a defendant validly waived his Miranda rights or that the defendant voluntarily made statements to the police, we will accord substantial deference to a judge's ultimate findings and uphold a judge's subsidiary findings[1] if warranted by the evidence. *Commonwealth*

[1] The defendant avers that because the judge's subsidiary findings are incomplete and sketchy we must scrutinize the record more carefully. Despite the alleged insufficiency of the findings, we conclude that the judge's conclusions as

v. *Williams,* 388 Mass. 846, 851 (1983). However, we must also make an independent determination about the correctness of the judge's application of the constitutional principles to the facts. *Id.*

Our first inquiry is whether the defendant made a knowing and intelligent waiver of his Miranda rights. The Commonwealth bears a heavy burden in demonstrating a valid waiver. *Commonwealth* v. *Silva,* 388 Mass. 495, 500-501 (1983). The defendant asserts that the Commonwealth did not meet this burden because the defendant was intoxicated at the time of the interrogation. He argues that the judge was not warranted in finding a knowing and intelligent waiver, because the evidence of intoxication introduced by the defendant offset the evidence of coherency and sobriety introduced by the prosecution. The defendant places great emphasis on the Billerica jail infirmary report of February 6, 1979. This report, compiled after the intake screening, indicated that the defendant appeared "to be under the influence of an unknown substance."

Intoxication alone is not sufficient to negate an otherwise voluntary act. *Commonwealth* v. *Hooks,* 375 Mass. 284, 289 (1978). Although some evidence suggests that the defendant may have been drinking or may have taken drugs, the judge found that the defendant was aware of his position at the time of the interrogation. The judge placed considerable significance on the fact that while the defendant had no memory of receiving his Miranda rights,[2] he did have a clear memory of the details of the incident in the motel room.

The judge's subsidiary findings are based on the judge's assessment of the witnesses' credibility. The judge is not required to find all evidence credible. *Commonwealth* v. *Perry,* 389 Mass. 464, 466 (1983). Although the defendant asserted that he was extremely intoxicated, every person who met the de-

---

to voluntariness are "clearly evident from the record." *Commonwealth* v. *Brady,* 380 Mass. 44, 52 (1980), quoting *Jackson* v. *Denno,* 378 U.S. 368, 378-379 (1964).

[2] It is important to note that the defendant does not argue that the police did not recite the Miranda warnings.

fendant in the three hours immediately following the murder and who testified found him normal.

The defendant further challenges the validity of the waiver on the ground that Detective Spartichino mentally coerced the defendant into confessing to the murder through his intimation that the defendant was a liar and that the defendant wanted to unburden himself. The defendant argues that these words were other than those normally attendant to arrest and custody and were calculated to elicit an incriminatory response. See *Rhode Island* v. *Innis,* 446 U.S. 291, 301 (1980).

This argument, however, is not persuasive in this case. The *Innis* rationale applies to situations where the suspect has exercised his Miranda rights and has refused to submit to questioning. The interrogation at that point must cease, until an attorney is present. *Commonwealth* v. *Brant,* 380 Mass. 876, 882, cert. denied, 449 U.S. 1004 (1980).

In this case, the defendant had not requested an attorney and was speaking freely at the time. Moreover, after the defendant blurted out that he had killed the victim, Spartichino reminded him of his rights. The trial judge found that Spartichino's statements were not coercive. We agree.

Furthermore, in examining the details of the interrogation, we find no circumstances warranting a contrary conclusion. The interrogation lasted only thirty to thirty-five minutes. Only Spartichino and one other officer were present during the questioning. The judge found that the police did not physically coerce the defendant.

The second inquiry is whether the defendant's confession was a free and voluntary act. When determining voluntariness, "the court must assess the totality of relevant circumstances to ensure that the defendant's confession was a free and voluntary act and was not the product of inquisitorial activity which had overborne his will." *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976). Every reasonable presumption against voluntariness will be indulged. *Commonwealth* v. *Hosey,* 368 Mass. 571, 577 (1975). After reviewing the circumstances of the defendant's confession, we conclude that the trial judge was warranted in determining that

the defendant's statements were made voluntarily. We base this decision primarily on our reasoning concerning the defendant's waiver of Miranda rights.

2. *Jury instructions.* The defendant claims that there was error in the judge's instructions on malice, provocation, self-defense, extreme atrocity or cruelty, voluntary intoxication, and voluntariness of his confession. These alleged flaws in the instructions are raised for the first time on appeal. Nonetheless, the defendant requests that we grant him a new trial or direct the entry of a verdict of a lesser degree of guilt pursuant to our power under G. L. c. 278, § 33E.

Although the defendant did not object to these instructions at trial, we must determine whether the alleged errors create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Ely,* 388 Mass. 69, 73-74 (1983). We view the absence of any objection as relevant, *Commonwealth* v. *Tavares,* 385 Mass. 140, 148, cert. denied, 457 U.S. 1137 (1982), and consider "the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980).

a. *Malice.* The defendant contends that the judge's instructions on malice and intent created a mandatory presumption in favor of guilt. Alternatively, he argues that these instructions impermissibly shifted the burden of disproving malice aforethought to the defendant. See *Sandstrom* v. *Montana,* 442 U.S. 510, 524 (1979); *Mullaney* v. *Wilbur,* 421 U.S. 684, 698-699 (1975). The trial judge stated that "[w]hen the killing is caused by the intentional use of a deadly weapon, such as a knife, there arises a presumption that the killing was with malice aforethought." The defendant claims that this statement, read in conjunction with the earlier instruction which states "[a]nd the heinousness or wrongfulness of the act is sufficient to sustain in law a finding of malice aforethought," rendered the charge defective. The defendant also asserts that the "finding" language[3] employed by the trial judge, as well as

---

[3]The judge's instructions are as follows: "[I]f you put these two elements together, and you find from the evidence beyond a reasonable doubt that

the instructions on intent[4] contributed to the likelihood that the jury understood that the defendant had to disprove malice.

We agree that the judge's use of the word ''presumption'' was incorrect and certainly regrettable. *Commonwealth* v. *Repoza,* 382 Mass. 119, 132 (1980). *Commonwealth* v. *Medina,* 380 Mass. 565, 577 (1980). Equally erroneous was the judge's use of ''finding'' language. *Commonwealth* v. *Richards,* 384 Mass. 396, 405 (1981). However, in the final analysis, ''whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.'' *Sandstrom* v. *Montana, supra* at 514. Therefore, we have upheld the use of the word ''presumption'' in malice instructions where the language of the charge, taken as a whole, ''effectively negates any burden-shifting'' and when it is clear that the presumption is not mandatory. *Commonwealth* v. *Richards, supra* at 403.

''The fact that on [one occasion] the judge lapsed into the use of the word 'presumption' when he obviously meant 'inference' [does] not detract from the otherwise thorough, accurate, and precise instructions on [malice].'' *Commonwealth* v. *McInerney,* 373 Mass. 136, 150 (1977). See *Commonwealth* v. *Festa,* 388 Mass. 513, 514-515 (1983). The judge repeatedly charged the jury that the Commonwealth had to prove the case against the defendant and each element of the offense beyond a reasonable doubt. The charge defining reasonable

---

the killing was unlawful and with malice aforethought, then you have a finding of murder. . . .

''If you find the existence of the elements that I have just described, malice aforethought, and unlawful killing, then you have a finding of murder.''

[4] The instruction on intent: ''But what a defendant does, or fails to do, may indicate intent or lack of intent to commit the offense charged. As a general rule, it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the evidence in the case leads you, the jury, to a different or contrary conclusion, you may draw the inference and find that the accused intended all the natural and probable consequences which one, standing in like circumstances, and possessing like knowledge, should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.''

doubt was correctly stated. The judge also correctly instructed on the presumption of innocence and that all presumptions of law independent of evidence are in favor of innocence. Listening to the charge as a whole, the jury would not understand the quoted language as creating a mandatory presumption of malice or as shifting to the defendant the burden of disproving malice.

Moreover, we see no merit in the defendant's contention that the finding language and the intent charge added to the likelihood that the jurors believed the defendant had to disprove malice. The "finding" language did not impose any burden on the defendant to introduce evidence to rebut malice aforethought. This factor, in light of the judge's charge to the jury that the "law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence," leads us to conclude that the judge's charge in this respect was free of reversible error. Also, the charge concerning intent was correct. *Sandstrom* v. *Montana, supra* at 515, does not invalidate the use of an entirely permissive inference or presumption which allows the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one, and which places no burden of any kind on the defendant. See *Commonwealth* v. *Ely,* 388 Mass. 69, 76 (1983).

b. *Provocation.* The defendant contends that, since the issue of provocation was clearly raised by the evidence, he was entitled not only to an instruction on voluntary manslaughter, but also to an instruction which places on the Commonwealth the burden of disproving this factor beyond a reasonable doubt. *Commonwealth* v. *Greene,* 372 Mass. 517, 519 (1977). While the judge correctly instructed on provocation, he neglected to repeat his instruction on the Commonwealth's burden of proving the absence of provocation.

Although the judge would have followed the better practice if he had restated the Commonwealth's burden, "the law does not require repetition of the same thought at each turn." *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977). We find the charge constitutionally sufficient because the judge adequately defined provocation and explained that it negates

a finding of malice. The judge repeatedly placed the burden of proof beyond a reasonable doubt on the Commonwealth and specifically did so when charging on self-defense. Furthermore, although the judge did not specifically state that provocation and malice are mutually exclusive, he properly defined manslaughter as the unlawful killing of another without malice. See *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 846 (1980).

c. *Self-defense.* The defendant asserts that the charge on self-defense was incorrect because the judge: (1) incorrectly stated that the state of mind is that of a "reasonable man"; (2) incorrectly stated that the victim's assault or threat was "a precondition to asserting the defense of self-defense"; (3) failed to instruct the jury that the Commonwealth had to prove beyond a reasonable doubt that the defendant used excessive force; and (4) failed to define sufficiently excessive force. We conclude that the judge's charge on self-defense did not create a substantial risk of a miscarriage of justice.

First, the defendant takes the judge's comments on a "reasonable man" state of mind out of context. The judge in his introductory remarks informed the jury that when he discussed self-defense he would discuss a state of mind — "at least that of a reasonable man." Approximately two transcript pages later, the judge correctly stated that a person using a dangerous weapon in self-defense must have a "reasonable apprehension of great bodily harm, and a reasonable belief that no other means would suffice to prevent such harm." Since the later instruction was proper, *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955), we find no error.

Second, the instruction concerning the need for an overt act by the victim by way of assault or threat,[5] was specifically upheld in *Commonwealth* v. *Shaffer,* 367 Mass. 508, 514-515 (1975). Although the Legislature modified part of the rule in

---

[5] "A pre-condition to asserting the defense of self-defense is that the person claiming it — and here it is the defendant, Mr. Doucette — must have been assaulted or threatened by Mr. Landry, the victim. In order to give rise to this defense whatsoever, there must be some overt act by Mr. Landry, threatening in nature, to commit a battery likely to produce death or serious physical harm to the defendant."

the *Shaffer* case, see G. L. c. 278, § 8A, inserted by St. 1981, c. 696, this action does not affect the court's approval of the instruction at issue here.

Finally, we find that the judge's instructions on excessive force do not require reversal. The judge stated four times that the Commonwealth had the burden of proving the defendant did not act in self-defense beyond a reasonable doubt. Also, we view the instructions defining reasonable force as sufficient to explain the issue of excessive force. When viewed as a whole, the charge clearly placed the burden of proof on the Commonwealth. Cf. *Commonwealth* v. *Stokes,* 374 Mass. 583, 591 (1978) (where instructions on burden of proof treated only in general terms).

d. *Extreme atrocity or cruelty.* The defendant asserts error in the judge's charge on extreme atrocity or cruelty for two reasons: (1) the instructions fail to distinguish sufficiently ordinary atrocity or cruelty from extreme atrocity or cruelty and (2) the instructions fail to delineate the factors upon which the jury could base its decision. We disagree with these assertions.

We conclude that the judge's lengthy description of extreme atrocity or cruelty sufficiently apprised the jury of the difference between extreme atrocity or cruelty and ordinary atrocity or cruelty. The judge consistently emphasized that "we are talking about a category of murder which is beyond the ordinary."

In addition, we do not interpret our decisions discussing the factors to be considered on the issue of extreme atrocity or cruelty as imposing a mandatory burden on a judge to recite each and every factor. See *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983) (recitation of a number of factors which a jury *can* consider when deciding whether a murder was committed with extreme atrocity or cruelty). Moreover, we have historically held that in the final analysis, the issue must be left largely to the judgment of the jury. *Commonwealth* v. *Connolly,* 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970). The judge correctly pointed out that the jury could consider the number of stab wounds inflicted and the defendant's actions in the motel room. These factors, although not exhaustive, are entirely acceptable. *Commonwealth* v. *Cunneen, supra.*

e. *Voluntary intoxication.* The defendant requests that we reduce his conviction to that of murder in the second degree because the trial judge neglected to instruct that the evidence of the defendant's use of drugs and alcohol should be considered when determining the defendant's capacity to commit deliberate, premeditated murder or murder with extreme atrocity or cruelty. We decline to reduce the defendant's conviction of murder in the first degree.

In this Commonwealth, while intoxication is no excuse or mitigation of a crime committed, a defendant is entitled, upon request, to an instruction to the effect that if he were so far overcome by intoxicating substances as to be rendered incapable of deliberate premeditation or of committing murder with extreme atrocity or cruelty, the jury must return a verdict of murder in the second degree, if they are satisfied beyond a reasonable doubt that all other elements of the crime are present. *Commonwealth* v. *King,* 374 Mass. 501, 508 (1978) (premeditation). *Commonwealth* v. *Perry,*[6] 385 Mass. 639, 648-649 (1982) (extreme atrocity or cruelty). These instructions, although required if requested, are not constitutionally based. *Reddick* v. *Commonwealth,* 381 Mass. 398, 407 (1980). Our inquiry under G. L. c. 278, § 33E, is whether, in the absence of objection, the omitted charge might have affected the jury and brought about a different verdict. *Commonwealth* v. *King, supra* at 508. In other words, we must assess whether the evidence of intoxication was so great, that we should exercise our extraordinary powers to "reach a result that is consonant with justice." *Commonwealth* v. *Shelley,* 381 Mass. 340, 355 (1980). We believe that this is not a case which requires the exercise of such powers.

The evidence revealed that at most the defendant had consumed a few drinks and three beers through the course of the entire day. There was also evidence that the defendant con-

---

[6] *Commonwealth* v. *Perry, supra,* has been applied retroactively only to the date of our decision in *Commonwealth* v. *Gould,* 380 Mass. 672, 684-685 (1980). See *Commonwealth* v. *Breese,* 389 Mass. 540, 550 (1983). Since this case was tried in 1979, the *Perry* holding is not applicable.

sumed five to seven pills, thought by the defendant to be seconals. While the defendant testified that he was seeing double and that he must have passed out, every person who came in contact with the defendant in the three hours immediately following the killing found him to be normal. In addition, the nature and number of the wounds are inconsistent with a claim of debilitating intoxication. Cf. *Commonwealth v. King*, 374 Mass. 501, 507 (1978) (knife wounds indicative of "untoward, foolish introduction of a dangerous weapon"). This is not a case where "alcohol was present in abundance, suffusing the case." *Commonwealth v. King, supra*. We therefore find no reason to reduce the conviction.

f. *Voluntariness of confession.* The defendant challenges the judge's instructions on the voluntariness of his statements to the police on two grounds: (1) they failed to inform the jury that the Commonwealth had the burden of proving voluntariness beyond a reasonable doubt and (2) they failed to state that intoxication may be considered when determining whether the statements were made by a rational mind. We conclude that failure to give these instructions under the circumstances did not create a substantial risk of a miscarriage of justice.

We acknowledge the long-standing rule in this Commonwealth which requires that a judge decide in a preliminary hearing in the absence of the jury that inculpatory statements were made voluntarily. We also acknowledge, that once the judge decides that the statements are admissible, "he should then instruct the jury not to consider the confession if, upon the whole evidence in the case, they are satisfied that it was not the voluntary act of the defendant." *Commonwealth v. Marshall*, 338 Mass. 460, 461-462 (1959). Furthermore, the Commonwealth must prove voluntariness beyond a reasonable doubt. *Commonwealth v. Tavares*, 385 Mass. 140, 152 (1982). Although the latter mandate has been applied only prospectively, *Commonwealth v. Parham*, 390 Mass. 833, 838 n.3 (1984), we nonetheless conclude that the judge's charge to the jury, in its entirety, clearly apprised the jury that the Commonwealth must prove beyond a reasonable doubt that the statements were voluntary.

The trial judge instructed the jury that before they could ''consider any of the statements attributed to the defendant while in that custodial situation, [they] must find that the statements were voluntary.'' Prior to this statement, the judge had instructed that the Commonwealth had to prove the case against the defendant and each element of the offense beyond a reasonable doubt. Thus, although the judge did not repeat the Commonwealth's burden of proof during the instruction on voluntariness, he was not required by law to do so. *Commonwealth* v. *Benoit,* 389 Mass. 411, 421 (1983).

Further, the judge's instructions on state of mind were sufficient to apprise the jury that they should consider the defendant's intoxication. In the initial instructions the judge defined voluntary as ''without coercion, without inducement on the part of police officers, that there was no fear imposed, if the defendant did not cooperate.'' In his supplemental instructions he stated that jury should consider the defendant's state of mind when addressing the issue of voluntariness.

The only evidence introduced which was relevant to the defendant's state of mind was the defendant's consumption of drugs and alcohol. Defense counsel's closing argument stressed the connection between the alleged lack of rationality or mental control and his use of alcohol and drugs. For these reasons, the jury could reasonably have inferred that intoxication could be considered when determining voluntariness.

3. *Ineffective assistance of counsel.* The defendant claims that he was denied the effective assistance of counsel. He assigns five grounds for this assertion: (1) counsel's failure to object to portions of the charge or to request further instructions; (2) failure to request an instruction on voluntary intoxication; (3) failure to obtain expert testimony on the effects of drugs and alcohol; (4) failure to investigate an insanity defense; and (5) improper cross-examination of the taxicab driver during the motion to suppress hearing. Our inquiry is twofold. First, we must examine whether trial counsel's conduct fell ''measurably below that which might be expected from an ordinary fallible lawyer.'' *Commonwealth* v. *Mahdi,* 388 Mass. 679, 686 (1983), quoting *Commonwealth* v. *Saferian,* 366 Mass. 89, 96

(1974). In addition, our cases require that we find prejudice resulting from the incompetence, or a deprivation of an "otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra.* The test is not to be made with the advantage of hindsight. *Commonwealth* v. *Adams,* 374 Mass. 722, 729 (1979).

a. *Failure to object and request further instructions.* As determined earlier in this opinion, taken as a whole the judge's instructions were adequate and did not create a substantial risk of a miscarriage of justice. At the conclusion of the judge's instructions, defense counsel requested supplementary instructions on the credibility of the police officers' testimony and on the state of mind of the defendant with reference to the voluntariness of the statements made to the police. Although trial counsel did not make every conceivable request or objection, his conduct did not fall "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

b. *Failure to request instruction on effect of intoxication on a verdict of first degree murder.* The theory of defense in this case was that the defendant killed the victim in self-defense when the victim attempted to assault him sexually. This theory, if believed, would completely exonerate the defendant. Counsel's failure to request an instruction on voluntary consumption of alcohol and drugs may have been a reasonable trial tactic. Counsel "may not have wished to press the point because it would have tended to undermine his claim that he acted in self-defense." *Reddick* v. *Commonwealth,* 381 Mass. 398, 407 (1980).

c. *Expert testimony on the effects of drugs and alcohol.* The defendant contends that his defenses related to his intoxication were seriously prejudiced because of counsel's failure to produce expert testimony on the effects of drugs and alcohol. We do not agree. The evidence simply did not support a finding that the defendant was so far overcome by intoxicants as to be incapable of first degree murder.

d. *Insanity defense.* Failure to investigate an insanity defense would fall below the level of competence demanded of attorneys, if facts known to, or accessible to, trial counsel raised

a reasonable doubt as to the defendant's mental condition. *Osborne* v. *Commonwealth,* 378 Mass. 104, 111 (1979). We conclude that this is not such a case.

The record is devoid of any evidence tending to suggest that the defendant lacked criminal responsibility on the evening of February 5-6, 1979. The defendant stresses three factors which, he believes, should have indicated to counsel the necessity of pursuing the defense of insanity: (1) the defendant's prior mental history; (2) the bizarre nature of the crime; and (3) Dr. Yudowitz's opinion in the Billerica jail infirmary report which characterizes the defendant's actions as a ''homosexual panic.''

The record reveals only that the defendant was receiving some treatment at a methadone clinic and that he had some emotional problems. At most, we can assume that the defendant was being treated for drug addiction. Drug addiction, however, is not a mental disease or defect. *Commonwealth* v. *Sheehan,* 376 Mass. 765, 767 (1978). Furthermore, we do not view a death by multiple stabbings as necessarily a ''bizarre'' murder. Although the circumstances of a crime may be some evidence of lack of criminal responsibility, this alone does not entitle a defendant to a jury instruction on criminal responsibility. *Osborne* v. *Commonwealth, supra.*

Finally, the defendant fails to demonstrate how the phrase ''homosexual panic'' used in an infirmary report compels the interposition of an insanity defense. The term, as we see it, merely described the defendant's version of the events which occurred in the motel room. The defendant points to no express mental disorder which may have been the source of the panic. See *Commonwealth* v. *Shelley,* 381 Mass. 340, 343 (1980) (dissociative state brought on by the defendant's ''borderline personality . . . disorder''). Therefore we conclude that the defendant was not deprived of a valid insanity defense.

e. *Cross-examination of taxi driver.* At the suppression hearing, defense counsel elicited an identification of the defendant during his cross-examination of the taxi driver. The prosecutor had failed to do so on direct. The defendant suggests that without this identification, the prosecution would have

been unable to support its theory that the defendant was co-
herent during the interrogation. We disagree. Aside from the
taxi driver's testimony, other persons testified that the defend-
ant was coherent during the interrogation. We fail to see how
this one piece of information would have influenced the judge's
decision on voluntariness. For the above reasons, we find no
violation of the defendant's right to the effective assistance of
counsel.

4. *Relief pursuant to G. L. c. 278, § 33E.* We have con-
sidered the entire case on the law and evidence and find that
the interests of justice do not require a new trial or a reduction
of the defendant's conviction to murder in the second degree.

*Judgment affirmed.*