COMMONWEALTH vs. ROBERT E. MONTEIRO.

Suffolk.  September 10, 1985. — November 1, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal*, Disclosure of evidence. *Constitutional Law*, Waiver of constitutional rights. *Waiver*.

A criminal defendant's contention to the effect that, if certain information possessed by the prosecution had been disclosed to him, he might have been able to obtain from a claimed eyewitness other information helpful to his defense provided no ground for reversal of his criminal convictions and dismissal of the indictments against him, where the defendant had neither made a pretrial request for disclosure of the names of informants or eyewitnesses or of information received from them, nor, in the absence of such a request, made any showing on appeal that the prosecution's lack of disclosure deprived him of a fair trial. [128-130]

There was no merit in a criminal defendant's contention that a judge erred in denying his pretrial motions to suppress his statements to police and to suppress items seized by police in a warrantless search of his residence, where the judge could properly find, based upon his assessment of witnesses' credibility, that the defendant had effectively waived his Miranda rights and had consented to the search. [130-131]

INDICTMENTS found and returned in the Superior Court Department on September 24, 1982.

Pretrial motions were heard by *Elbert Tuttle*, J., and the cases were tried before *Elizabeth A. Porada*, J.

*James E. McCall* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J.  On November 28, 1983, the defendant, Robert E. Monteiro, was convicted by a jury of murder in the first degree, armed robbery, and the unlawful carrying of a firearm. The trial judge sentenced the defendant to life imprisonment on the murder conviction and to concurrent terms of eighteen to twenty-five years on the armed robbery conviction

and three to five years on the conviction for unlawfully carrying a firearm. The defendant appeals from the convictions, claiming that a different judge, who heard pretrial motions, erred by denying his motion to suppress his statements to police officers, including an alleged confession, by denying his motion to suppress physical evidence seized during a warrantless search, and by denying his motion to dismiss the indictments.[1] The latter motion was based on the Commonwealth's pretrial failure to disclose the names of two informants. One of those informants claimed to have been an eyewitness to the criminal events. He led the police to the defendant, identifying him as the assailant. The other informant had previously introduced the eyewitness informant, his brother, to the police. The defendant also seeks relief pursuant to G. L. c. 278, § 33E (1984 ed.). We reject all the defendant's contentions and affirm the judgments.

The judge who denied the motions made the following relevant findings, setting them forth in a detailed memorandum. On the afternoon of July 9, 1982, a man armed with a pistol entered a store in Dorchester and demanded money from the proprietor. The victim, an employee at the store, grabbed the robber by the arm, a struggle ensued, and the victim was shot and killed by a .22 caliber bullet. After the shooting, the robber took money and fled from the premises.

On the evening of July 9 or 10, 1982, Detective Kenneth Acerra of the Boston police department automobile squad received a telephone call from Charles Legoa. Legoa, a paid police informant who had provided the police with information on several occasions relative to Boston car thefts, informed Acerra that his brother, Juan Legoa, had been present at the robbery, had seen one of the proprietors shot, and could identify the robber.

Acerra, along with his partner, Detective Cunningham, met with Juan Legoa later that evening. Juan Legoa informed the officers that he knew the person who had shot the victim, but

---

[1] It is not clear from the record appendix that the motion to dismiss applied to any indictment other than the indictment for murder in the first degree. However, the motion judge treated the motion as applying to the three indictments, as do the parties in this court. We do so also.

only by sight. He offered to assist the police provided he would not be compelled to testify and his name would not be disclosed because he feared for his life. The officers agreed to these conditions. Juan Legoa told the police that he had been present inside the store at the time of the robbery, had closed the door at the robber's instruction, and had seen the struggle and the shooting.

During the next few evenings Juan Legoa and Charles Legoa, accompanied by Acerra and Cunningham, drove through Dorchester and Roxbury looking for the robber. On the evening of July 13, 1982, while the Legoas were with Acerra and Cunningham, Juan Legoa saw the defendant in the company of a woman and identified him to the detectives as the robber. The detectives requested and received back-up assistance from Detective Sergeant William Kelley and an officer from the K-9 unit. The officers arrested the defendant and the woman.

The defendant was told that he was under arrest for murder and was handcuffed. Kelley then read him the Miranda warnings from a card. When asked if he understood the warnings, the defendant replied that he did. The defendant then told the officers that his name was "Eduardo Spruce" and that the woman was "Sharon Harvey." The officers searched the defendant and found an envelope bearing the name "Sharon Monteiro" and containing fourteen .22 caliber bullets. Without further questioning, the defendant was brought to Boston police headquarters where he was booked under the name "Eduardo Spruce." Acerra then informed the defendant of his right to use a telephone, but the defendant declined to do so. As Acerra completed the booking, the defendant told him that his true name was Robert E. Monteiro, Jr.

Sergeant John Doris from the homicide unit arrived at the station shortly after the defendant was booked. He again gave the defendant his Miranda warnings by reading from a card. After reading the defendant his rights, Doris asked him if he understood. The defendant replied, "Yes." The sergeant then asked the defendant if he was willing to talk about the case, and the defendant again responded, "Yes."

In the presence of the defendant, Acerra informed Doris that he would like to prepare an affidavit in order to obtain a search warrant for the defendant's apartment for the purpose of recovering the pistol with which the victim had been killed. Upon hearing this exchange, the defendant stated that, if the officers would allow "his woman" to leave and if they would not disturb his landlady and not handcuff him when he went to the premises, he would cooperate and would give the officers information about the robbery and the murder, and he would consent to a search of his apartment. Sergeant Doris agreed to the first two requests but refused to allow the defendant to go unhandcuffed. A consent form was prepared by the police and was read and signed by the defendant.

The defendant admitted to the police that he had robbed the store, that he had had a pistol in his possession, and that in a struggle with the victim the pistol had discharged, injuring the victim.[2] The defendant and the police then went to the defendant's home where he produced a .22 caliber pistol which the police seized along with some clothing. The judge concluded that the statements made by the defendant to the police and his cooperation in taking them to the premises in which he lived were voluntary.

The judge further found as follows. The prosecutors who functioned at the probable cause hearing and at the hearing on the motions which are the subject of this review were unaware that the defendant had been arrested as a result of Juan Legoa's identification until the prosecutor who argued the motions was notified of these facts by Detective Acerra on September 6, 1983. On the following day, the prosecutor informed defense counsel that Juan Legoa had been present at the robbery and was the person who identified the defendant at the time of his arrest. The defendant immediately filed a motion to dismiss the indictments. The basis for the motion, as described by the motion judge, was that the defendant "had not been provided with exculpatory evidence." The motion is set forth verbatim

---

[2] These statements appear to be the principal subject of the defendant's motion to suppress statements.

in the margin.[3] In his memorandum, the judge reported that he had been informed, presumably by counsel, that Juan Legoa was himself the victim of a homicide on the evening of September 6, 1983.

After an evidentiary hearing at which Charles Legoa was examined by the prosecutor and defense counsel relative to Juan Legoa's knowledge about the robbery and murder, the judge concluded that "all of the information which would have been provided by Juan Legoa was inculpatory and the unavailability of Juan Legoa is to the advantage of the defendant and not the Commonwealth." He denied the motion to dismiss. The judge also concluded that the Commonwealth had sustained

---

[3] "THE Defendant, ROBERT E. MONTEIRO, JR., says that the Indictment against him should be DISMISSED and assigns the following reasons therefore:

"1.    The BOSTON POLICE learned of an EYE-WITNESS (who did not want to be an EYE-WITNESS) sometime between the murder on July 9th, 1982, and MONTEIRO's ARREST on July 13, 1982.

"2.    His COURT-APPOINTED counsel, ATTORNEY SALIM R. SHAKUR, ESQ., was never informed of the existence of this 'finger-man'.

"3.    ASSISTANT DISTRICT ATTORNEY JAMES HAMROCK, ESQ., never revealed the names of CHARLES LAGOA or LOGAO or JUAN LAGOA or LOGAO to ATTORNEY SHAKUR.

"4.    The motives of either LAGAO-LOGOA have never been tested under oath.

"5.    No opportunity to INTERVIEW these WITNESSES PURSUANT to Commonwealth vs. Balliro, 349 Mass. 505 (1965), and Commonwealth vs. Lewinski, 367 Mass. 889 (1975), was ever afforded defense counsel for MONTEIRO.

"6.    The Defendant was DENIED equal access to WITNESSES.

"7.    PROMISES, REWARDS and extrinsic INDUCEMENTS governing the behavior of the LAGOA-LOGAO brothers have never been tested under oath.

"8.    Perhaps the POLICE or PROSECUTION people who WITHHELD this information must suffer the consequences of a DISMISSAL of the Indictment WITH PREJUDICE.

"WHEREFORE, the Defendant moves that the Indictment now pending against him be DISMISSED" (emphasis in original).

its burden of proof beyond a reasonable doubt that the defendant was fully informed of his Miranda rights, that he waived those rights, that his statements to the police were voluntary, and that he consented to the search of his premises. The judge denied the motions to suppress.

We turn first to the motion to dismiss the indictments. Although in his brief the defendant appears to assert that by prosecuting him and not prosecuting Juan Legoa the Commonwealth violated his rights guaranteed by the State and Federal Constitutions, that assertion is not supported by argument as is required by Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), and therefore we do not consider it. The thrust of the defendant's motion and argument is that he was unfairly, and therefore unconstitutionally, prejudiced by the prosecution's failure to disclose, until after Juan Legoa's death, that the police had learned from Charles Legoa and Juan Legoa that Juan had been at least an eyewitness to, and perhaps a participant in, the robbery, and that the defendant's arrest was the result of Juan's identification of the defendant as the assailant. Of course, the prosecution is responsible for any improper withholding of information by the police. *Commonwealth* v. *Redding*, 382 Mass. 154, 157 (1980). *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261-262 n.8 (1980).

The defendant calls to our attention the testimony of Charles Legoa before the motion judge that his brother Juan had told him that Juan had participated in the robbery and that Charles had conveyed this information to the police. He also directs our attention to testimony of Detective Cunningham that a police superintendent authorized the payment of a sum of money to Juan Legoa. Thus, the defendant argues, the police had information which, if disclosed to the defendant in timely fashion, might have resulted in the defendant's obtaining proof that Juan Legoa had falsely identified the defendant in return for immediate or anticipated benefits from the police.

The defendant criticizes the failure of the judge to make findings with respect to Juan Legoa's participation in the crimes. We note that Charles Legoa's testimony on the questions whether Juan Legoa had told him that Juan was more

than an eyewitness to the robbery and whether Charles had passed that information along to the police was far less than clear, and was at times inconsistent. We also note that the police witnesses testified that the police had not been told about Juan Legoa's possible participation in the robbery. It may be that the absence of findings is the result of the failure of the evidence to satisfy the judge as to those matters. In any event, even if the judge had found that Juan Legoa had participated in the robbery and that the police were informed about the possibility of his participation, the defendant has not shown that he is entitled to relief.

The record does not disclose, and the defendant does not contend, that he ever requested disclosure of the names of informants or eyewitnesses or of information received from them. Thus, the prosecution's duty was limited to the furnishing of evidence in its possession that was obviously supportive of the defendant's innocence. *United States* v. *Agurs*, 427 U.S. 97, 107 (1976). Any failure in that regard would entitle the defendant to relief only if it would have created at trial a reasonable doubt that did not otherwise exist. *Id.* at 112. *Commonwealth* v. *Wilson*, 381 Mass. 90, 107 (1980). The defendant does not appear to contend, nor would such a contention have merit, that the prosecution withheld information of that nature. Instead, the defendant argues that the information possessed by the prosecution was such that, had it been disclosed to the defendant, the defendant might have been able to obtain evidence through Juan Legoa, or information leading to evidence, that would be helpful to the defense. The defendant can only speculate as to what that evidence or information might have been.

The defendant's argument fails in two respects. First, we are unaware of any case in which a court has held that without the defendant's request the prosecution must volunteer informants' names and information about them. "Although representatives of the state may not suppress substantial material evidence, they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses." *In re Imbler*, 60 Cal. 2d 554, 569 (1963), quoted

with approval in *United States* v. *Agurs, supra* at 109. Second, although "[t]here is . . . no requirement that a defendant, denied access to evidence that might prove helpful in his defence, must make a specific showing of just what the evidence would have proved and how far he was prejudiced by the withholding," *Commonwealth* v. *Johnson*, 365 Mass. 534, 547 (1974); *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499, 504 (1973), the defendant, having made no request for disclosure, was not "denied access" to evidence, and he is not entitled to relief without showing prejudice.

A defendant is not entitled to relief from a conviction without showing that the prosecution's lack of disclosure deprived him of a fair trial. *United States* v. *Agurs, supra* at 108. *Brady* v. *Maryland*, 373 U.S. 83, 87-88 (1963). The defendant has not shown any "failure" on the part of the prosecution. He is not excused from showing prejudice and has shown none. He has not demonstrated that his trial was unfair. Therefore, the judge correctly denied the defendant's motion to dismiss the indictments.

The defendant's contentions that the judge erroneously denied his motion to suppress his statements and his motion to suppress the items the police took from his residence have no merit. The judge found that before the defendant made those statements he had been given the Miranda warnings at least twice and that he understood them. He also found that in the defendant's presence Detective Acerra told Sergeant Doris that Acerra wished to prepare an affidavit in order to obtain a warrant to search the defendant's premises for the pistol with which the victim had been killed. Upon overhearing that communication, the judge found, the defendant said he would cooperate and give the police information about the robbery and murder and would consent to a search of his residence if the police would allow "his woman" to leave, if they would not disturb his landlady, and if they would not handcuff him when they went to the premises. The judge concluded beyond a reasonable doubt that the defendant was fully informed of his Miranda rights, that he understood them and waived them, and that his statements to the police were voluntary. The judge

also concluded beyond a reasonable doubt that the defendant consented to the search of his residence.

The defendant does not claim there was no testimony providing a basis for the judge's subsidiary findings. He simply argues that the subsidiary finding that the police gave the defendant the Miranda warnings is erroneous because Sharon Monteiro[4] testified that she did not receive any Miranda warnings and she did not hear any being given to the defendant. Also, the defendant argues that the judge's conclusions that the defendant effectively waived his Miranda rights and that his statements and consent to the search of his residence were voluntary are erroneous. He contends that the evidence establishes that the waiver was obtained, the statements were made, and the consent was given as a result of coercion. He points to the evidence that the defendant's wife was being held in the next room and to her testimony that while she was in a different room from the defendant the police coerced her into cooperating with them.

The judge's subsidiary findings were based on his assessment of the witnesses' credibility. He was entitled to believe the police witnesses and not Sharon Monteiro. *Commonwealth* v. *Doucette,* 391 Mass. 443, 448 (1984). In the absence of clear error, we accept a judge's subsidiary findings. *Commonwealth* v. *Taylor,* 374 Mass. 426, 431 (1978). There was no such error here and therefore we accept the judge's finding that the defendant was given the Miranda warnings. Also, we accord substantial deference to the judge's ultimate findings, *Commonwealth* v. *Doucette, supra* at 447; *Commonwealth* v. *Harvey,* 390 Mass. 203, 205 (1983), and nothing here suggests that they were erroneous. Even if the evidence on which the defendant relies would have warranted a finding that the defendant was coerced, which is extremely doubtful, clearly that conclusion was not required. The motions to suppress were properly denied.

---

[4] The woman with the defendant when he was arrested was his wife, Sharon Monteiro. There was no evidence that the police knew that fact before they searched the defendant's residence.

We have reviewed the entire record as we are required to do by G. L. c. 278, § 33E. We find no basis to disturb the verdicts.

*Judgments affirmed.*