COMMONWEALTH *vs.* LEE UNDERWOOD. No. 91-P-1301. February 8, 1994. *Homicide. Practice, Criminal,* Assistance of counsel, Argument by prosecutor, Instructions to jury. *Constitutional Law,* Assistance of counsel.

On appeal from his conviction for murder in the second degree and the denial of his motion for a new trial, the defendant alleges incompetency of counsel, overreaching by the prosecutor in his closing argument, and error in the judge's instructions to the jury. Concluding that the defendant's arguments are without merit, we affirm the conviction.[1]

1. *The facts.* There was evidence to show that in the early morning hours of January 27, 1985, the defendant and his girlfriend, Donna Carter, were leaving a lounge in Watertown. Carter knew many people in the lounge and stopped to speak with an acquaintance, the victim, who affronted the defendant by patting Carter on her buttocks.

Upon leaving the lounge, the defendant and Carter went to her car where they argued. The defendant left the car, stating that he wanted to go back to the lounge to use the facilities. Carter got out of the car to walk while she waited for the defendant. When she returned to the car a few minutes later, she saw the defendant approaching from the opposite direction. They got into the car to leave the area. As they drove away, Carter saw a crowd of people gathered about a person lying in the middle of the

---

[1]The defendant was convicted in 1988, and filed a timely notice of appeal. However, the trial transcript was not filed until October, 1991. He thereafter filed a motion seeking a new trial on the ground of incompetency of counsel which was denied in 1992. In 1993, he was allowed to file late a notice of appeal from that denial, and the appeal was consolidated with the appeal pending from his conviction. The motion for new trial was based upon, essentially, the same issues raised on the direct appeal.

street. Once inside Carter's house, she asked the defendant what had happened to the person in the street.

As related by Carter, the defendant informed her that he had hit the man with a steel pipe which he had taken from Carter's car. He had buried the pipe in the backyard before coming into the house but then decided to retrieve it. He placed it in a garbage bag which he and Carter disposed of later that day. Carter did not learn the victim's identity or of his death until the next day when she read the newspaper.

There was also evidence to show that when the defendant returned to the lounge, he exchanged words with the victim who followed him outside. The defendant went back to Carter's car, took a pipe Carter kept for her protection from under the front seat, and followed the victim to his car. The defendant testified that he approached the victim and demanded an apology for the inappropriate touching of Carter. An argument ensued, and when the victim lunged for him, the defendant hit him with the pipe. He was unsure of the number of blows he struck and he did not realize how seriously the victim was hurt. The defendant believed he fell to the ground because he was simply "knocked out."

The medical examiner stated that the victim died as a result of blunt head trauma. There were three areas of injury to his head which were consistent with blunt force from behind and which indicated that two of the blows came at opposite angles. Blood found in the area indicated that the victim was struck while he was on the ground.

2. *Competency of counsel.* To the extent it reasonably could be inferred from the defendant's letters to Carter that he was seeking her assistance in fabricating a defense of self-defense, trial counsel objected without success to the introduction of the letters in evidence. There is no merit to the allegation of incompetency of trial counsel by reason of his failure to seek redaction of his own name from those letters in which the defendant urges Carter to contact his attorney. As stated by the trial judge, a "plain reading of the letters does not convey the impression that defense counsel was a participant in the scheme to fabricate defendant's claim of self-defense. . . . The letters do not state that counsel was assisting in the fabrication of the defense . . . ."

If the defendant was hurt by trial counsel's decision not to call a witness mentioned in his opening statement at the close of the Commonwealth's case, the injury was self-inflicted. When trial counsel represented that the defendant's coworker would testify that he saw the defendant with a black-eye and badly bruised face two days after the fight, he had a very reasonable basis for the statement. He had spoken with the witness who had made that statement to him and he had served a summons upon him. The defendant does not claim that trial counsel knew or should have known that he intended to testify that he only had a "small marking on his left cheek." It is not enough to argue that the coworker would have supported the claim of self-defense while ignoring the defendant's testimony. The de-

cision to go forward with the theory of self-defense without evidence of the observations made by the coworker two days after the alleged fight is not inexplicable. Compare *Anderson* v. *Butler*, 858 F.2d 16 (1st Cir. 1988). Trial counsel reasonably could conclude that calling the coworker to testify was not a "realistic option." *Commonwealth* v. *Nardone*, 406 Mass. 123, 128 (1989). Subsequent to his opening statement, trial counsel had to deal with the defendant's contradiction of the anticipated evidence as well as his inability to withstand cross-examination, all as exacerbated by the inferences available from the letters to Carter.

The defendant's trial counsel was not incompetent in failing to prepare the defendant to testify in support of an intoxication defense. The defendant had told the police that he had one drink at the lounge and was not drunk. Moreover, a claim of impairment by reason of alcohol could have cast doubt on some of the details of the defendant's theory of self-defense. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 458 (1984).

3. *Closing argument.* We agree that the prosecutor misstated the evidence in that, during his testimony, the defendant never admitted that he was the "aggressor" in the fight with the victim. However, we see no substantial risk of a miscarriage of justice by reason of that statement in view of the fact that the defendant did testify that he returned to the lounge with the intention of seeking the victim, that he initiated the confrontation with the victim, and that while he had a pipe, the victim was unarmed at all times. Compare *Commonwealth* v. *Pavao*, 34 Mass. App. Ct. 577 (1993). Further complaint about the prosecutor's use of imaginary dialogue overlooks that the prosecutor used the dialogue as a form of presentation of the argument which, but for the one misstatement, had a solid basis in the evidence and which was followed by the judge's final charge that included the admonition that statements of counsel do not constitute evidence. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990).

4. *Jury instructions.* Our review of the judge's main and supplemental jury instructions, see *Commonwealth* v. *Doucette*, 391 Mass. at 450, quoting *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980), leads us to conclude that a substantial risk of a miscarriage of justice has not occurred. There is no real difference between the instructions here delivered and those found correct in *Commonwealth* v. *Hodge (No. 2)*, 380 Mass. 858, 865 (1980). See also *Commonwealth* v. *Zaccagnini*, 383 Mass. 615, 618 (1981); *Commonwealth* v. *Lowe*, 391 Mass. 97, 110-112 (1984).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

*Lawrence P. Murray* for the defendant.
*Patricia M. Darrigo*, Assistant District Attorney, for the Commonwealth.