Connon, J.
BACKGROUND
On May 16,2002, the Defendant, William J. Woods, was arrested by the Barnstable Police Department in connection with a housebreak in Falmouth wherein a number of firearms were taken. The arrest occurred at approximately 1:30 a.m., as the defendant was walking along Route 28 in Hyannis near the Mobil station. When arrested on a warrant, the defendant had nothing on his person. The arresting officer, Brian Morrison, was in the defendant’s presence for approximately one hour up to the time when the defendant was booked. During this period, Officer Morrison did not detect any odors of alcohol and didn’t believe the defendant was under the influence at that time. Sergeant Kevin Tynan, the watch commander in the midnight to 8:00 a.m. shift, booked the defendant at approximately 1:45 a.m. When the defendant first appeared in the booking area, Sergeant Tynan didn’t observe anything unusual about the way the defendant walked. Nor did he observe any smell of alcohol on the defendant’s breath, who was standing within 2V2 feet from him. The defendant was in Sergeant Tynan’s presence for approximately 15 minutes, and during the booking procedure, the defendant answered all questions appropriately.
After the booking, the defendant was taken to an interview room measuring 10 feet by 12 feet and containing a desk and three chairs, with a glass window. Detective Paul Everson, a detective with the Barnstable Police Department with 24 years experience, advised the defendant of his rights per Miranda Everson had been working with the Falmouth Police Department in the investigation of the housebreak in Falmouth. During the interview, Woods was seated across the desk from Everson, some five feet away. Everson did detect a smell of staleness from the defendant’s breath and asked Woods about alcohol and drug use. Woods responded that he had been on a “bender” but was okay right now. Woods gave a detailed statement of his involvement in the housebreaks in Falmouth after signing a waiver on May 16, 2002 at 8:47 a.m. After the break, Woods traded one of the guns for 1/2 ounce of cocaine and marijuana. Woods told the police that he was addicted to alcohol and Oxycontin and used up all of the drugs he received from trading the guns.
Garvin Kelley, of the Dennis Police Department, who on six to seven prior occasions had dealings with Woods, was standing some two and a half feet away from him at the police station. Kelley could smell a stale odor of alcohol coming from Woods’s breath, however Kelley didn’t believe that Woods was under the influence of alcohol and at one point he asked Woods if he was going to be dope sick, whereupon Woods responded, “No, not now.” In moving to suppress the statements, William Woods signed an affidavit on January 29th of 2004 which in part stated that at the time he was questioned he had been on alcohol and Oxycontin and confused, and when he was detained in jail he experienced drug and alcohol withdrawal. In addition, he averred that he had not signed a written statement when in effect he had signed a statement which was marked as Exhibit B in this Motion to Suppress.
Woods was held on bail at the Barnstable County House of Correction after his arrest. On May 16, an intake report completed by the Medical Department reflected in part that Woods told them he was an alcoholic; that , he had 24 beers and a fifth of gin and that he abuses Oxycontin and cocaine. The note in the report reflects that Woods would be monitored for detox, and that was at approximately 8:00 a.m. on May 17 of 2002. It was noted that when Woods was first seen in the medical unit, he had visible signs of withdrawal, i.e. tremors, and the protocol was started.
The Motion to Suppress in large part is based upon the defendant’s use of alcohol and drugs prior to his arrest, and that said use deprived the defendant of knowingly and voluntarily and intelligently waiving his rights under Miranda. On this issue, the defendant offered the testimony of Dr. Paul A. Spiers, a Board Certified Clinical Psychologist with an emphasis on neuropsychology (behavior as it relates to different parts of the brain which indicate whether that part is working), and forensic neuropsychology. In the past, Dr. Spiers has been qualified as an expert in Superior Court, Federal District Court and the Probate Courts in this Commonwealth as well as the District Court. A history given to Dr. Spiers by Woods was that in April of2002, the defendant started to abuse Oxycontin and *228 cocaine. At the time of his arrest, he had been abusing the drugs for approximately three weeks, drinking 30 beers a day and doing an ounce of cocaine every other day. Dr. Spiers testified that the defendant’s understanding and appreciation of Miranda was specifically assessed with the AUA-MR (Grisso 1998). His current scores were in the average range. The AUA-MR is divided into four sections: Comprehension of Miranda Rights (CMR); Comprehension of Miranda Rights— Recognition (CMR-R); Comprehension of Miranda Vocabulary (CMV); and Function of Rights in Interrogation (FRI). The AUA-MR was developed by research funded by the National Institute of Mental Health to Dr. Thomas Grisso, Director of Forensic Training and Research at the University of Massachusetts. The procedure and methods of inquiry were standardized and normative data have been collected from populations of adult and juvenile offenders. In a number of cases, the AUA-MR has been accepted as a scientifically valid instrument for measuring the abilities required by a defendant to waive his/her rights under Miranda
Dr. Spiers further opined that given the predictable effect of alcohol on the frontal networks of the brain, an effect that is only exaggerated in the presence of neurodevelopmental compromise to these same networks, it is possible to state with certainty that Mr. Woods would have had significantly reduced ability to intelligently evaluate his circumstances and the potential implications of waiver on his rights. As such, Dr. Spiers doubted that the waiver Woods signed couldn’t have met the intelligent criteria. Dr. Spiers concluded and it was his professional opinion that Mr. Woods could not have given a valid waiver of Miranda or any voluntary statement to the Barnstable Police Department.
DISCUSSION
While there is no per se rule excluding as involuntary statements made during drug withdrawal, the court recognized that the prosecution bears a heavy burden to show that the defendant’s waiver of his Miranda rights and his subsequent confession were voluntary. Commonwealth v. Paszko, 391 Mass. 164 (1984). The Supreme Judicial Court has held on numerous occasions in the context of waiver of Miranda rights that, “Intoxication alone isn’t sufficient to negate an otherwise voluntary act.” Commonwealth v. Doucette, 391 Mass. 443, 448 (1984); Commonwealth v. Ward, 426 Mass. 290 (1997); and Commonwealth v. Wolinski, 431 Mass. 228 (2000).
When this defendant was in custody, he did not appear to be intoxicated. All that was evident was a stale odor of alcohol coming from his breath. He appeared to respond appropriately to all of the questions asked and gave a detailed account of his involvement in the housebreak in Falmouth.
The Commonwealth has the burden of demonstrating beyond a reasonable doubt that any Miranda waiver by the defendant was knowing, intelligent and voluntary. Commonwealth v. Judge, 420 Mass. 433, 447 (1995), citing Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602 (1966). And, as with voluntariness, generally intoxication bears heavily on the validity of Miranda waiver, although it is insufficient alone to require a finding of involuntariness. Commonwealth v. Ward, 426 Mass. 290, 295 (1997).
The police warned the defendant prior to any questioning that he had the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Miranda v. Arizona supra 479.
The test for voluntariness of a confession is “whether in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that statement was not the result of a free and voluntary act.” Commonwealth v. Selby, 420 Mass. 656; Commonwealth v. Raymond, 424 Mass. 382. In the case before me, two different officers made no observations that Woods appeared to be intoxicated and that he appeared to be aware of his surroundings, although he did have a stale odor of alcohol coming from his breath. The statements of the defendant that, prior to his arrest, he had consumed a case of beer, alcohol and cocaine, belies the fact that his outward appearance didn’t give any indication of the amount that he consumed or that he was intoxicated to any measure.
Although Dr. Spiers concluded that withdrawal tremors being noted the following morning after his arrest confirmed that he was under the influence while being questioned by the Barnstable Police Department, and he further opined that it was improbable that Mr. Woods could have given a valid waiver of Miranda or a truly voluntary statement to the Barn-stable Police Department.
These facts are not unlike the case of Commonwealth v. Fielding, wherein the defendant, who was withdrawing from heroin, requested during his presence at the Police Department that he receive methadone, which request was granted. Although Woods himself was diagnosed with attention deficit hyperactivity disorder, this condition in and of itself would not invalidate both the voluntariness of the confession or the waiver under Miranda And as pointed out in Commonwealth v. Fielding, 371 Mass. 97 at 112, while the demands of the drug habit occasioned the crimes, drug withdrawal did not impose such duress as to invalidate the confessions. There was nothing about the interrogation techniques employed that was oppressive or coercive. The defendant simply gave a detailed account of his involvement in the housebreaks in Falmouth. For all these reasons, defendant’s motion is DENIED as not being freely and voluntarily made.