COMMONWEALTH *vs.* DANIEL SAMA.

Middlesex. September 9, 1991. - December 5, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Malice. Intoxication. Practice, Criminal,* Instructions to jury.

Where, at a murder trial, the defendant presented credible evidence of debilitating intoxication, bearing on his ability to possess meaningful knowledge of the circumstances in which he acted at the time of the victim's death, it was error requiring reversal for the judge to deny a requested instruction to the jury that they could consider this evidence on the issue of malice, and to instruct the jury to the contrary. [296-299]

At a murder trial, the judge should have instructed the jury to decide first whether the defendant was guilty of murder and, if so, then to decide whether he was guilty of murder in the first degree. [299-300]

In the circumstances of a first degree murder trial, the defendant was entitled to have the jury instructed to consider evidence of the defendant's intoxication in determining whether he was capable of committing murder with extreme atrocity or cruelty. [300-301]

INDICTMENT found and returned in the Superior Court Deparment on January 6, 1989.

The case was tried before *Hiller B. Zobel*, J.

*William P. Homans, Jr.*, for the defendant.

*Michael Fabbri*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. A jury convicted the defendant of murder in the first degree based on extreme atrocity or cruelty. On appeal, the defendant contends that: (1) the judge erroneously instructed the jury as to the effect of the defendant's voluntary intoxication on proof of the elements of extreme atrocity or cruelty and malice aforethought, (2) the jury's failure to indicate their finding of malice on the verdict slip, after being directed to do so, established that the jury did not find mal-

ice aforethought at all, and the defendant therefore should have been found not guilty of murder; and (3) the conviction should be reduced to murder in the second degree, pursuant to G. L. c. 278, § 33E (1990 ed.). We hold that the defendant is entitled to a new trial as a result of defective and confusing jury instructions on the issue of malice aforethought. In light of this decision, it is not necessary for us to address each of the arguments raised by the defendant on appeal. We do, however, choose to comment on certain issues raised because they may recur at retrial.

The essential evidence in this case is as follows. The defendant and the victim, who first met in October of 1988 at a halfway house for recovering alcoholics, met again on the morning of December 20, 1988, at a rooming house in South Boston where the defendant was residing. The defendant and the victim spent the rest of the day, that evening, and the afternoon of the following day together, during which time they each consumed a considerable amount of alcohol and several tablets of a prescription drug, Xanax, which affects the central nervous system. The defendant and the victim eventually ended up in Waltham near the Amtrak railroad tracks, where they continued drinking. At some point, the defendant used his pocket knife to slash the victim twenty-three times about the face, head, ears, and neck. The victim also suffered knife wounds on both of his hands and his left arm which were consistent with his having defended himself, as well as wounds to his head which were consistent with his having been kicked by the defendant. The victim did not die immediately from these wounds but could have survived up to one hour or more.

The Waltham police received a telephone call from two Amtrak employees who reported that they observed an injured man stumbling about the area of the railroad station. The police responded and subsequently placed the defendant in protective custody. The defendant attempted to leave the area when he first observed the police. The officers testified that the defendant appeared intoxicated and that he had blood on his face, clothes, and hands. During the ride to the

police station, the defendant was crying and asking about the charge against him, but he stopped crying after being informed that he was only in protective custody. An officer who conducted periodic routine checks on the defendant while he was in a jail cell noticed that his hands appeared to become cleaner as the evening progressed.

Acting on information from a young boy, police found the victim's body approximately two hours after the defendant had been taken into custody. Later that evening, the police initiated an interview with the defendant. After being given Miranda warnings, the defendant gave false statements concerning his activities of that day, and he stated that he last saw the victim at 1 P.M. in South Boston. A laboratory analysis revealed that the blood found on the defendant's coat, pants, and knife was consistent with the victim's blood type and makeup while inconsistent with the defendant's blood type, and also that hair samples from the victim were consistent with hairs found on the defendant's shoes and his knife.

The defendant did not dispute the fact that he killed the victim, but instead claimed that, due to his uncontrolled alcoholism and his ingestion of alcohol and drugs that day, he could not remember killing the victim and, in any event, he did not intend to do so. The defendant testified that the last event that he could recall, prior to waking up in the Waltham police station, was a shooting pain in his leg as a result of the victim's hitting him on his injured knee with a cane. The defendant admitted that he made false statements to the police, but he claimed that the trial testimony refreshed his recollection of the events up to the time that the victim allegedly struck him with the cane. No testimony or evidence, however, could refresh the defendant's recollection of the events that occurred between that incident and the time when he awoke in a jail cell.

The defendant's expert witness, a registered nurse specializing in the area of substance abuse, opined that the defendant was a chronic alcoholic, that he likely was intoxicated as a result of ingesting alcohol and Xanax on December 21, 1988, that he likely would experience memory loss in these

circumstances, and that he could have been hallucinating on the day of the killing. The defendant's father testified that the defendant had, on several occasions, engaged in violent activities of which he later had no memory, but there was no evidence introduced about the defendant's susceptibility to hallucinations.

1. *The jury instructions regarding malice aforethought.* The defendant asserts that the first degree murder conviction cannot stand because, inter alia, the judge incorrectly instructed the jury not to consider the effect of the defendant's voluntary intoxication when deciding whether he possessed the malice which "may be found by inference from the defendant's commission of an act which a reasonably prudent person would know is likely to result in the death of another." *Commonwealth* v. *Moore*, 408 Mass. 117, 134 n.9 (1990).[1] See *Commonwealth* v. *Starling*, 382 Mass. 423, 428 (1981). More specifically, the defendant assigns as error the judge's refusal to instruct the jury that, if they found the defendant was intoxicated at the time of the murder, they could consider that fact when determining what he "knew" for purposes of finding malice aforethought under the "third prong" of malice. See note 1, *supra*. The failure correctly and concisely to state the law on this point, the defendant urges, may have misled the jury and resulted in a denial of justice. The defendant was entitled to the requested instruction, and the judge's instructions to the jury constituted reversible error.

---

[1]In order to convict a defendant of murder the jury must find that the defendant possessed malice aforethought. *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). In Massachusetts, "malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). This method of establishing malice aforethought "is sometimes referred to as the third prong of malice." *Commonwealth* v. *Moore, supra.* Proof of malice under this theory does not rely on evidence of the defendant's specific intent to kill or cause grievous bodily harm.

The defense in this case largely rested on the claim that the defendant's voluntary intoxication and resulting mental impairment on the day of the crime prevented him from possessing the malice aforethought necessary to commit murder. The defendant requested that the judge instruct the jury to consider the evidence of the defendant's intoxication when deciding whether he had the capacity to premeditate and deliberate, *Commonwealth v. Doucette*, 391 Mass. 443, 455 (1984), citing *Commonwealth v. King*, 374 Mass. 501, 508 (1978), whether he committed murder with extreme atrocity or cruelty, *Commonwealth v. Perry*, 385 Mass. 639, 649 (1982), and whether he possessed malice aforethought as evidenced by a specific intent to kill or a specific intent to cause grievous bodily harm, *Commonwealth v. Grey*, 399 Mass. 469, 470-471 (1987). The judge so instructed the jury. The defendant subsequently requested that the judge further instruct the jury on the element of malice, charging them to consider the evidence of the defendant's intoxication when they deliberated as to whether he possessed sufficient knowledge of the circumstances to realize that, by his actions, he created a plain and strong likelihood that death or grievous bodily injury would result therefrom. *Starling, supra* at 428. The judge refused to give this instruction and, in fact, charged the jury to the contrary, specifically directing them not to consider the effect of the defendant's intoxication on his ability to possess malice aforethought under this theory.[2] The defendant objected to this portion of the charge.

In support of his position, the judge cited our decision in *Grey, supra.* There we held that a defendant is entitled to

[2]During their deliberations, the jury asked the judge to explain what he meant when he told them they could not consider the effect of the defendant's intoxication in relation to the third prong of malice. In responding to the question, the judge suggested that the evidence of the defendant's debilitating intoxication, if believed, would permit the jury to find that the defendant had no knowledge of the circumstances. This instruction touched on a proper statement of the law. We are satisfied, however, that the judge's explanation did not cure the original defect in his instructions. In fact, we believe it is more likely that this contradictory charge added to the confusion already in the minds of the jury.

have the jury consider evidence of his intoxication when deciding whether he acted with malice as evidenced by a specific intent *to* kill or a specific intent *to* cause grievous bodily harm. *Id.* at 471. We need not develop this issue of intoxication's effect on the defendant's intent because error lies in the judge's instruction concerning the effect of intoxication on knowledge. Under the third prong of malice, the Commonwealth must establish the guilty *knowledge* of the defendant beyond a reasonable doubt, and evidence of a defendant's intoxication should be considered by the jury. Evidence of intoxication certainly bears on the defendant's ability to possess the requisite knowledge of the circumstances in which he acted.

When deliberating as to whether the Commonwealth has proved the knowledge aspect of malice aforethought under the third prong, a jury should consider: (1) the nature and extent of the defendant's knowledge of the circumstances at the time he acted; (2) whether, in the circumstances known by the defendant, a reasonably prudent person would have recognized that the defendant's conduct would create a plain and strong likelihood of death or injury. In order to establish the third prong of malice in this case, the Commonwealth had the burden of demonstrating that the defendant knew that he was stabbing the victim with a knife and that a reasonably prudent person, although not necessarily the defendant, would recognize that such conduct carried with it the risk of death or serious bodily injury.

The question of a defendant's knowledge is exclusively within the province of the jury, and they are "free to draw an inference of guilty knowledge . . . 'if the inferences drawn from the circumstances be reasonable and possible.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts*, 393 U.S. 1058 (1969). "Classically, knowledge is proved by resort to 'proof by inference from all the facts and circumstances developed at the trial.' " *Albano, supra* at 134, quoting *Commonwealth* v. *Holiday*, 349 Mass. 126, 128 (1965), and

cases cited therein. The defendant presented credible evidence of debilitating intoxication bearing on his ability to possess meaningful knowledge of the circumstances at the time of the victim's death. The defendant testified that he long has suffered from uncontrolled alcoholism which in the past has caused him to experience memory loss. Moreover, the defendant's father testified and described his son's chronic substance abuse and what he perceived to be his son's resulting mental impairment. Lastly, an expert witness testified on behalf of the defendant, and she opined that the defendant could have hallucinated at the time of the killing, due to the effect of the alcohol and drugs he ingested earlier that day. The jury should have been allowed to consider this testimony when deciding whether the Commonwealth proved the defendant's guilty knowledge beyond a reasonable doubt.[3] Without more, we hold that evidence of a defendant's voluntary intoxication is a factor for the jury to consider whenever the Commonwealth bears the burden of establishing the knowledge of the defendant beyond a reasonable doubt.

In addition to the defective instruction regarding the evidence of the defendant's intoxication, we note also that the judge improperly instructed the jury with respect to the approach which they should take in conducting their deliberations. The judge repeatedly instructed the jury to consider first whether the defendant was guilty of murder in the second degree under one or more of the three alternative forms of malice, and then decide whether the evidence supported an additional finding of deliberate premeditation or extreme atrocity or cruelty, which would increase the verdict from second to first degree murder. As a guide for the jury, this approach, in our view, did nothing more than invite confusion and error.

---

[3]Our decision today does not affect our long-standing rule that evidence of intoxication does not provide a basis for exonerating the defendant of all criminal responsibility for his conduct. See *Commonwealth* v. *Lanoue*, 392 Mass. 583, 592 n.6 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990).

Murder in the first degree and murder in the second degree cannot coexist. Murder in the second degree is murder that is not murder in the first degree. A jury should not be instructed to find murder in the second degree and then proceed to inquire whether the defendant is guilty of murder in the first degree. A jury should be instructed first to decide whether the defendant is guilty of murder and, if so, then to decide whether the defendant is guilty of murder in the first degree. If so, the jury should say so by their verdict. If not, they should find the defendant guilty of murder in the second degree and say so by their verdict.

2. *The jury instructions on murder with extreme atrocity or cruelty.* The defendant also argues that the judge's instructions regarding the effect of intoxication on proof of first degree murder with extreme atrocity or cruelty were defective because he failed to instruct the jury that evidence of the defendant's intoxication bore on the issue of the degree of the defendant's culpability. Further, because the instructions regarding extreme atrocity or cruelty were so intermingled with the erroneous instructions on malice, the defendant contends that jury confusion resulted. *Commonwealth* v. *Doucette*, 391 Mass. 443, 455 (1984).

Following his instructions on murder in the first degree by extreme atrocity or cruelty, the judge gave the following instructions on intoxication to the jury: "Now, with respect to intoxication, whether by alcohol or Xanax, or any combination of the two, bearing in mind that the defendant does not have to prove anything, if you conclude that [the defendant's] mental capacity was substantially reduced due to the intoxication at the time of [the victim's] death, you may consider what effect, if any, the defendant's impaired capacity had on his ability to appreciate the consequences of his choices of action. You may take this into account to the extent you regard it as appropriate in evaluating the evidence of the various factors that I just went over with you [concerning murder in the first degree with extreme atrocity or cruelty]. Here again, the Government does not have to prove that the defendant was sober, that is, it doesn't have to prove

that he was not under the influence of the alcohol and/or the drug. If the Government has proved that the defendant was not affected, that is, that his mental capacity was not substantially reduced by the drug and/or the alcohol, then you need not consider the effect of the drug and/or the alcohol. But if the Government has failed to prove that his mental capacity was not substantially reduced by the drug and/or the alcohol, then you may consider the effect in evaluating his conduct."

The defendant claims, quite correctly, that, while these instructions were proper under our reasoning in *Commonwealth* v. *Gould*, 380 Mass. 672, 685-686 n.16 (1980), they did not include additional information concerning the effect of intoxication on the degree of the defendant's culpability that we required in *Commonwealth* v. *Doucette*, 391 Mass. 443, 455 (1984), and *Commonwealth* v. *Perry*, 385 Mass. 639, 648-649 (1982). The instructions in this case did not meet the requirements stated in *Doucette*.

3. *Conclusion.* Since we hold that the defendant is entitled to a new trial on the basis of the defective jury instructions, we do not discuss the jury's failure to indicate their finding of malice on the verdict slip, nor do we address under G. L. c. 278, § 33E, the considerations presented by the defendant. The judgment is reversed, the verdict set aside, and this case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*