COMMONWEALTH *vs.* CHARLES C. DELANEY, THIRD.

No. 91-P-1259.

Plymouth. January 11, 1993. - July 13, 1993.

Present: PERRETTA, KASS, & LAURENCE, JJ

Further appellate review granted, 416 Mass. 1106 (1993).

*Homicide. Malice. Intent. Mental Impairment. Practice, Criminal,* Instructions to jury, Argument by prosecutor, Voluntariness of statement. *Evidence,* Cumulative evidence, Hearsay, Relevancy and materiality. *Probable Cause.*

At a murder trial, the judge correctly instructed the jury with respect to the "third prong" of malice [733-735]; moreover, the defendant failed to demonstrate any "grave prejudice" requiring reversal of his conviction under the "substantial risk of a miscarriage of justice" standard, in light of the considerable weight of the evidence against him [735-739].

There was no merit to a criminal defendant's contention that the judge, in his instruction on manslaughter, improperly diluted the Commonwealth's burden of proving malice and the absence of provocation. [739-740]

At a criminal trial, certain documents containing hearsay were properly excluded [740], as was certain hearsay testimony [740].

At a murder trial the judge properly excluded proffered evidence of prior misconduct of the victim, where the evidence was remote and inflammatory, and of marginal relevance. [741]

There was no merit to a criminal defendant's assertions that the prosecutor's closing argument was improper. [741-742]

There was no error in the denial of a criminal defendant's motions to suppress his statements to police as well as items seized pursuant to a warrant. [742-743]

INDICTMENT found and returned in the Superior Court Department on December 2, 1986.

Pretrial motions to suppress evidence were heard by *John D. Sheehan*, J., and the case was tried before *R. Malcolm Graham*, J.

*Donald A. Harwood* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

LAURENCE, J. On April 30, 1986, Charles C. Delaney, III, strangled his estranged ex-wife, Pom Song Delaney, with a

piece of rope. He surreptitiously buried her in a hole that he had dug two days earlier in his backyard in Plymouth. After giving various false accounts of her whereabouts over the next few months, he finally confessed the crime to investigating Plymouth police officers on October 28, 1986, and was indicted for murder in the first degree in December, 1986.

Delaney's defense at the two-week jury trial (at which he did not testify) was lack of criminal responsibility. He presented evidence, including expert testimony, purporting to establish that at the time he strangled his ex-wife he was suffering from post-traumatic stress disorder (PTSD) emanating from his military service in Vietnam and Lebanon. That condition supposedly caused him to suffer a "blackout" or "flashback" as he was killing her. As a result, he claimed, he was not conscious of his actions and thus could not have possessed the requisite criminal intent for the crime of murder. The jury nonetheless found him guilty of second degree murder on October 27, 1989. He appeals on the several grounds discussed below, none of which we find meritorious.

Delaney's principal claim of error is that the judge failed to give a requested instruction that the jury consider whether his mental condition affected his capacity to know the circumstances of his action under the "third prong" of malice, in connection with the charge on first and second degree murder. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987) ("Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm . . . [and also] may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act").

Delaney did not, however, preserve this point at trial. Following the charge, his only specific objection was to the judge's failure to instruct the jury that they could find him guilty of manslaughter if they determined that he suffered mental impairment short of insanity. (The judge did so in

supplemental instructions.) Delaney consequently failed to save his rights below by making the objection he now relies on appropriately known to the judge, in order to give the judge an opportunity to correct any error. See *Commonwealth* v. *Coleman*, 389 Mass. 667, 671-672 (1983).

In any event, there was no error. Delaney inaptly relies on *Commonwealth* v. *Grey*, 399 Mass. at 470, *Commonwealth* v. *Sama*, 411 Mass. 293, 297 (1991), and *Commonwealth* v. *McLean*, 32 Mass. App. Ct. 978, 978-979 (1992). In each of those cases the jury was told that evidence of the defendant's mental condition could *not* be considered in deciding whether he had the requisite state of mind constituting malice. By contrast, the judge here instructed the jury that they could consider evidence of Delaney's mental impairment with respect to his ability to have possessed malice aforethought at the time he strangled his ex-wife. The judge gave this instruction in the context of reiterated reminders of the Commonwealth's burden to prove the defendant's state of mind and criminal responsibility beyond a reasonable doubt. See *Commonwealth* v. *Sires*, 413 Mass. 292, 300-301 (1992). In discussing malice and criminal responsibility, the judge specifically drew the jury's attention to determining the defendant's "thinking and rational process," "mental status," "frame of mind," and "motive" with respect to "the circumstances attending the killing." The judge did this expressly in connection with explaining the process of inferring malice in the absence of proof of a specific intent to kill, particularly with regard to an act that would create a plain and strong likelihood that death or serious bodily injury would follow.

Viewing the charge as a whole and as a reasonable juror would interpret it, see *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980); *Commonwealth* v. *Estremera*, 383 Mass. 382, 394 (1981); *Commonwealth* v. *Doucette*, 391 Mass. 443, 450-451 (1984), we conclude that the judge's instructions provided the substantial equivalent, with respect to the third prong of malice, of those endorsed over two years later in *Commonwealth* v. *Sama*. The jury were told to consider the nature of Delaney's understanding of the circum-

stances attending the killing and whether his conduct was such as created a plain and strong likelihood of death or injury. 411 Mass. at 298. The mere fact that the judge did not explicitly state the Commonwealth's burden or the elements of malice in terms of Delaney's "knowledge" is immaterial in light of the entire, essentially accurate charge.

Even were Delaney correct in arguing that the judge's charge on the third form of malice was defective, his cause would not be advanced. Applying the applicable standard — whether an unobjected-to error created a substantial risk of a miscarriage of justice in the context of the entire trial, see *Commonwealth* v. *Doucette*, 391 Mass. at 450; *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986); *Commonwealth* v. *Costa*, 414 Mass. 618, 627 (1993) — we see no likelihood that any injustice resulted. A verbatim *Sama* instruction on the third prong of malice would not have created reasonable doubt in the minds of the jurors that Delaney had knowledge of the relevant circumstances. The evidence overwhelmingly indicated his awareness of those circumstances. He admittedly knew he was strangling someone with a garrote and, based upon his self-described prior combat experiences, he knew (as would any reasonably prudent person) that such conduct entailed the risk of death or serious bodily injury to the person being strangled. See *Commonwealth* v. *Beattie*, 29 Mass. App. Ct. 355, 361, 363 (1990), *S.C.*, 409 Mass. 458, 459 (1991). Cf. *Commonwealth* v. *Sama*, 411 Mass. at 298; *Commonwealth* v. *Sires*, 413 Mass. at 299. The Commonwealth's position that Delaney had deliberately murdered the victim was essentially supported by Delaney's acknowledgement that he had strangled her during an argument over custody of their children and had buried her in the backyard in a hole previously prepared. No contention has been (or could be) made that the act of strangling someone with a rope does not create a risk of death or serious injury. Cf. *Commonwealth* v. *Garabedian*, 399 Mass. 304, 316 (1987); *Commonwealth* v. *Sires*, 413 Mass. at 303; *Commonwealth* v. *Dixon, ante* 653, 655 n.2 (1993).

Delaney's effort to avoid the impact of this evidence by advancing a PTSD defense — based almost entirely on his extrajudicial, self-serving, postcrime statements — was neither substantial nor persuasive. Cf. *Commonwealth* v. *Sires*, 413 Mass. at 299. He told the police that he had either "blacked out or . . . had a flashback" at the moment of the strangling. A "blackout," or loss of memory, would be unavailing to Delaney, because "it tells us nothing about what the defendant knew at the time" he strangled his ex-wife. *Id.* at 300. As to the "flashback," Delaney told the police that "he remember[ed] going on an ambush in Vietnam[1] and coming up behind them and using the garrote[.] And the next thing he remembered, Pom Song was on the floor." He also told his psychiatric expert witness during a pretrial interview that, at the time of the killing, he had a memory of garroting a Druse militiaman during his 1983-1984 service in Lebanon.

It was thus clear from Delaney's own evidence that, whether he intended to garrote or thought he was garroting the victim or another, he knew he was strangling, indeed killing, someone. He was, accordingly, fully aware of circumstances at the time of the crime charged creating a plain and strong likelihood of death resulting from his acts. For third prong malice that is all that is required, see *Commonwealth* v. *Sama*, 411 Mass. at 298; *Commonwealth* v. *Sires*, 413 Mass. at 299, 303, and a defendant's capacity to interpret accurately the circumstances or to appreciate fully the actual consequences of his acts is immaterial. See *Commonwealth* v. *Blake*, 409 Mass. 146, 155-156 (1991). Whether he knew

---

[1]Delaney told the police, and several family members and coworkers testified, about his alleged service in Vietnam while in the military. No one appears to have commented on how unique such service must have been, since Delaney entered the Army only upon graduating from high school in 1976, well after American military forces had left Vietnam in 1973 and the last American civilians had evacuated Vietnam in April, 1975. See 12 The New Encyclopaedia Britannica 361-362 (15th ed. 1986); 29 *id.* at 264-266. It may be that Delaney was attempting to clothe his PTSD defense in a more credible mantle by spuriously identifying himself as a member of the most widely recognized group of PTSD sufferers, the Vietnam veterans.

whom he was strangling and was able to appreciate the wrongfulness of his acts went not to the issue of his awareness of the circumstances creating a likelihood of death but rather to the issue of his criminal responsibility. See *Commonwealth* v. *Garabedian*, 399 Mass. at 316; *Commonwealth* v. *Blake*, 409 Mass. at 155-156.

As to his asserted lack of criminal responsibility, which was the focus of Delaney's defense, the evidence was not impressive. His principal reliance was on a psychiatrist who testified that Delaney had PTSD as a result of three specific stressful situations, or "stressors," allegedly experienced by Delaney during his tour of duty as a tank mechanic in Beirut, Lebanon.[2] That testimony was entirely based upon Delaney's postindictment statements, and none of the experiences he related could be corroborated by other evidence. The psychiatrist conceded on cross-examination that, if the stressful incidents Delaney had related had not in fact occurred, it would undermine his diagnosis as well as Delaney's credibility and that the pending charges gave Delaney a strong incentive to exaggerate symptoms and lie.

Thus pressed on cross-examination, Delaney's psychiatrist confined his opinion regarding Delaney's lack of criminal responsibility to Delaney's "flashback" at the precise instant he killed the victim. Delaney was, the psychiatrist acknowledged, criminally responsible while fighting with the victim just before the strangling, over the issue of child custody (which Delaney viewed as the most important thing in his life at that time), and immediately thereafter, when Delaney buried the victim's body.

---

[2]The supposed stressors were: assisting in recovering bodies from the Beirut Marine barracks following their bombing in October, 1983; unauthorized participation in covert nighttime missions with Christian Phalangists, which included Delaney's garroting a Druse soldier; and discovering the tortured, mutilated body of a ten year old Lebanese boy whom he had befriended. The psychiatrist was unable to obtain independent verification of any of these episodes. Delaney's commanding officer in Lebanon could not confirm these incidents or that Delaney, who spent most of his duty in Lebanon in a Beirut hotel, had ever been exposed to hostile fire or combat.

The Commonwealth's rebuttal experts unequivocally opined that Delaney was not suffering from any impairment which would prevent him from having an awareness of the circumstances or from appreciating the wrongfulness of his conduct. Moreover, they concluded that he was in fact malingering — fabricating psychiatric symptoms for ulterior purposes — based on a number of revealing observations.[3] Delaney's expert's explanation of his conduct was thus severely weakened both by its lack of independent credible foundation and by the Commonwealth's experts. More significantly, with respect to the asserted instruction error as to malice, no psychiatric testimony was presented that addressed the issue of the effect PTSD could have, or might have had, on Delaney's capacity to be aware of the circumstances attending his death-dealing actions or on his capacity to form the requisite intent or state of mind for malice.

Given the absence of such evidence, the considerable weight of incriminating evidence,[4] and the sufficiency of the judge's charge as a whole, there was no risk that the jury would have failed to understand that they were to consider Delaney's mental state at the time of the strangling and its impact on his ability to appreciate the circumstances and wrongfulness of his deeds. There was no danger that the jury

---

[3]For example, early in the interviewing process, Delaney asked the Commonwealth's examining psychiatrist if he "knew anything about post-traumatic syndrome" and if he noticed Delaney's twitch, an affectation that vanished when Delaney was alone and disappeared after the third interview. Suspecting that he was being led to a self-serving diagnosis, the examiner asked Delaney if the nightmares of which Delaney complained occurred twenty to thirty times a month as they did in others with PTSD. Delaney agreed that they did but declined to describe their content. In fact, the expert testified, no psychiatric illness was characterized by nightmares of such frequency. Observations of Delaney as he slept in the hospital revealed none of the sleep disturbances he allegedly suffered from the nightmares.

[4]In addition to that previously mentioned, undisputed evidence was presented by the Commonwealth that, shortly before the murder, Delaney had openly expressed his desire to kill his ex-wife; had inquired about methods of disposing of her body; had asked a coworker if he would help Delaney dump the body in a forest; had dug a large, grave-like hole in his backyard; and after her disappearance had given a series of conflicting explanations about her whereabouts.

could have found Delaney guilty of second degree murder without finding him aware of the fact that he was strangling someone and that a reasonably prudent person would recognize that such conduct carried with it the likelihood of death or serious injury. See *Commonwealth* v. *Estremera*, 383 Mass. at 394-395; *Commonwealth* v. *Sama*, 411 Mass. at 298; *Commonwealth* v. *Sires*, 413 Mass. at 298-300, 303. Delaney has failed to demonstrate that his conviction on this record represents the kind of "grave prejudice" which alone requires reversal under the "miscarriage of justice" standard. *Commonwealth* v. *Beattie*, 29 Mass. App. Ct. at 359.

Delaney's other appellate contentions are no more substantial. There is nothing to his assertion — not raised below and based on isolated portions of the charge — that the judge improperly diluted the Commonwealth's burden of proving malice and the absence of provocation in his manslaughter instruction.[5] The judge's instructions, viewed in their entirety, adequately informed the jury that the Commonwealth had the burden of proving malice beyond a reasonable doubt; that the presence of certain mitigating circumstances negated malice; and that one of those circumstances was a heat of passion caused by an adequate provocation, examples of which he provided. "Thus the court made it clear to the jury that in order to find malice they had to find a state of mind free from passion generated by provocation." *Commonwealth* v. *Peters*, 372 Mass. 319, 325 (1977).

The judge further instructed the jury that, where there is evidence of provocation, the Commonwealth had the burden of proving that the defendant did not act in the heat of passion before they could return a verdict of murder and that, if the Commonwealth proved the killing and proved that the killing resulted from adequate and reasonable provocation, the jury could find the defendant guilty of voluntary man-

---

[5]The alleged provocation consisted of vehement arguments with the victim over custody of their children and her physical assaults on Delaney, which he characterized as ongoing physical abuse. Delaney, a supposed veteran of physical encounters with armed enemy combatants, stood six feet, five inches tall and weighed 240 pounds. The victim was five feet, four inches tall and weighed 110 pounds.

slaughter. There was no error on this score. See *Commonwealth* v. *Doucette*, 391 Mass. at 452-453; *Commonwealth* v. *Callahan*, 401 Mass. 627, 632 (1988); *Commonwealth* v. *Todd*, 408 Mass. 724, 727 (1990); *Commonwealth* v. *Sires*, 413 Mass. at 301; *Commonwealth* v. *McLean*, 32 Mass. App. Ct. at 980.

Delaney's evidentiary issues also lack merit. The hearsay military reports concerning the dangerous conditions in Beirut, prepared by a declarant who did not testify and was not shown to be dead or otherwise unavailable, were properly excluded. They were relevant only for their truth, and no evidence was proffered that Delaney was ever aware of their contents. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 570 (1985); *Commonwealth* v. *Phoenix*, 409 Mass. 408, 423 (1991); Liacos, Massachusetts Evidence 337 (5th ed. 1981). Since the excluded documents were not made part of an offer of proof or marked for identification and did not become part of the record, there is no basis to conclude Delaney was harmed by their exclusion, see *Commonwealth* v. *Blake*, 409 Mass. at 159, particularly since they were cumulative of testimony about Beirut conditions. See *Commonwealth* v. *McDonough*, 400 Mass. 639, 646 (1987).

The exclusion of hearsay testimony by Delaney's friends and relatives regarding his statements to them about his traumatic service in Beirut, particularly his friendship with a young boy and discovery of his mutilated corpse, was similarly justified on the basis of its cumulative nature. See *ibid.*; *Commonwealth* v. *Durning*, 406 Mass. 485, 497 (1990). Since Delaney did not testify, his description of that evidence as prior consistent statements (to rebut the Commonwealth's contention that Delaney had invented his PTSD defense only after the killing) misses the mark. Such statements are relevant only to witness credibility and are admissible only to show that a witness's in-court testimony is not recently contrived as charged. See *Commonwealth* v. *Zukoski*, 370 Mass. 23, 27 (1976); *Commonwealth* v. *Saarela*, 376 Mass. 720, 723 (1978); Liacos, Massachusetts Evidence at 169.

Nor was there error in the judge's discretionary exclusion of evidence of prior misconduct by the victim (alleged prostitution and physical assaults on Delaney). That evidence was essentially cumulative of other evidence of his ex-wife's temper and "abuse." It had marginal, if any, relevance, which the judge could properly determine was vastly outweighed by its remote and inflammatory character. See *Commonwealth v. Marangiello*, 410 Mass. 452, 456 (1991). Delaney did not present any claim of self-defense[6] or any sort of "battered husband syndrome" that would make the victim's violent history relevant. See *Commonwealth v. Fontes*, 396 Mass. 733, 735 (1986). His psychiatrist did not rely on the victim's tumultuous relationship with Delaney as one of the stressors that brought on his PTSD. Further, Delaney's past statements concerning his troubled marital relationship were not admissible under the "state of mind" exception to the hearsay rule; they related solely to memories of past events, not to his contemporaneous (with the killing) intent or state of mind. See *Commonwealth v. Lowe*, 391 Mass. 97, 104-105, cert. denied, 469 U.S. 840 (1984). We are satisfied that the judge acted within the bounds of his lawful discretion in all of his exclusionary rulings. See *Commonwealth v. LaSota*, 29 Mass. App. Ct. 15, 24 (1990); *Commonwealth v. Gauthier*, 32 Mass. App. Ct. 130, 133 (1992).[7]

Delaney's protestations that the prosecutor's closing argument impermissibly commented on his failure to testify and injected the prosecutor's personal beliefs and opinions into the trial were not raised below. In any event, they derive from mischaracterizations of isolated portions of argument

---

[6]Any history of prior domestic hostilities could not be viewed as an element of provocation. See *Commonwealth v. Amaral* 389 Mass. 184, 188 (1983). Since the adequacy of the provocation is measured by an objective standard, any evidence that Delaney was peculiarly susceptible to provocation in the circumstances was immaterial. See *Commonwealth v. Garabedian*, 399 Mass. at 315. See also note 5, *supra*.

[7]Delaney's catch-all argument that the judge's exclusion of evidence violated his "due process right" to present all favorable proofs is unsupported by any legal authority and does not rise to the level of appellate argument cognizable by this court. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Larson v. Larson*, 30 Mass. App. Ct. 418, 428 (1991).

taken out of context. The prosecutor's challenged remarks were legitimate comments on the evidence and permissible requests that the jury draw certain inference therefrom. See *Commonwealth* v. *Smith*, 387 Mass. 900, 906-907 (1983); *Commonwealth* v. *Shea*, 401 Mass. 731, 739 (1988); *Commonwealth* v. *Feroli*, 407 Mass. 405, 409 (1990). Any possibility of prejudice was cured by the judge's instructions: arguments of counsel were not evidence; the jury verdict had to be based solely on the evidence; the defendant was presumed to be innocent; the burden of proof was exclusively on the Commonwealth; the defendant was not obliged to produce any evidence; and no inferences could be drawn from his failure to testify. See *Commonwealth* v. *Buckley*, 410 Mass. 209, 222 (1991); *Commonwealth* v. *Cosme*, 410 Mass. 746, 753-754 (1991); *Commonwealth* v. *Gonzalez*, 22 Mass. App. Ct. 274, 282 n.10 (1986); *Commonwealth* v. *Manago*, 26 Mass. App. Ct. 262, 267 (1988); *Commonwealth* v. *Marsh*, 26 Mass. App. Ct. 933, 934-935 (1988).

There was, finally, no error in the denial of Delaney's motions to suppress his self-incriminating statements to the police or the fruits of the police search (the victim's body) pursuant to a warrant that he claims lacked probable cause. His statements were made after receiving his Miranda warnings, and he presents no basis, other than his disagreement, for rejecting the motion judge's finding that his admissions were voluntary. We are satisfied that he knowingly waived his constitutional and statutory rights when he spoke to the police. We need not adopt Delaney's version of the facts when the judge's was supported by the evidence and is entitled to substantial deference. See *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984); *Commonwealth* v. *Parker*, 402 Mass. 333, 339 (1988); *Commonwealth* v. *Ferrara*, 31 Mass. App. Ct. 648, 654 (1991); *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 296 (1992). Delaney's conclusory contention that the affidavit in support of the search warrant did not show probable cause is simply wrong, as the motion judge found. The affidavit presented evidence of Delaney's statements of his desire to kill the victim; his efforts to enlist help to get rid of

her body; his observed digging of a hole, five feet long by three feet wide by four feet deep, in his back yard just before the killing; and his numerous conflicting explanations for her disappearance over many months. Such information adequately established the probability that the victim's body would be found buried in Delaney's back yard. See *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982); *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990).

*Judgment affirmed.*