Commonwealth v. Messer.

COMMONWEALTH *vs.* EDWARD D. MESSER.

No. 93-P-405.

Berkshire. January 11, 1994. - June 23, 1994.

Present: WARNER, C.J., PERRETTA, & JACOBS, JJ.

*Practice, Criminal,* Instructions to jury. *Homicide. Malice. Intoxication. Intent.*

At the trial of an indictment for murder in the first degree in which the defendant was convicted of second degree murder, no substantial risk of a miscarriage of justice was created by the judge's incorrect instruction on malice as an element of murder in the second degree solely by reason of omitting two definitions on which the jury might have relied to find malice. [711]

At the trial of an indictment for first degree murder in which the defendant was convicted of second degree murder, no substantial risk of a miscarriage of justice was created by the judge's instruction (correct at the time it was given, before the decision of *Commonwealth* v. *Sama*, 411 Mass. 293 [1991]), that voluntary intoxication could not be a mitigating factor in third prong malice, where there was ample evidence, including the testimony of the defendant, such that a rational jury would not have harbored a reasonable doubt that the defendant, although intoxicated, knew that he was stabbing the victim with a knife. [711-713]

There was no merit to a criminal defendant's contentions that the judge's instructions to the jury failed adequately to distinguish murder from manslaughter [713] or that the instructions on the burden of proof diluted or shifted the Commonwealth's burden [713].

INDICTMENT found and returned in the Superior Court Department on July 12, 1990.

The case was tried before *William W. Simons*, J.

*Linda C. Fentiman* for the defendant.

*Anne M. Kendall*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant, tried on an indictment charging murder in the first degree, appeals from his conviction of second degree murder, claiming the judge erred in instructing

the jury. Since no objection was made to these instructions at trial, we review to determine whether they created a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth v. Costa*, 414 Mass. 618, 627 (1993). We affirm.

At trial, the defendant did not deny that he fatally stabbed Raymond Sour at about 11 P.M. on July 1, 1990. Rather, he argued that his was a "classic case of manslaughter" grounded on intoxication and provocation. Abundant evidence was introduced of his ingesting a substantial amount of alcohol together with a "hit" of LSD prior to the stabbing.[1] At one point in the evening, the defendant and Sour, who also had been drinking, found themselves in the apartment of a friend where they argued and where Sour threatened to kick the defendant in the head. The defendant testified that Sour grabbed him by the throat and said "I'm going to kill you and your kids. I'm going to cut them." Immediately after the threat, the defendant ran to his home which was next door. There, he was observed as appearing "upset" and "scared" as he ran upstairs to check his four children. He then said, "Nobody is going to kill my kids." Within a short time, he obtained his fishing knife from the kitchen of his home, ran back to his neighbor's apartment and knocked at its door. At that point, no more than five minutes had elapsed from his first leaving that apartment. An occupant of the apartment, who was standing beside Sour within the apartment, opened the door and said "Ed, don't stab me with that." The defendant reached through the doorway, pushing Sour against the wall and stabbing him once in the upper left side of his abdomen. At that time, the defendant was heard to say that Sour was "not going to hurt my kids" and that he "got what he deserved." The defendant then ran to his cousin's nearby home, handed him the knife

---

[1]There was evidence that the defendant drank eighteen to twenty cans of beer during the afternoon on July 1, and at about 8 P.M., washed down the LSD with the contents of a sixteen-ounce cup filled with ice and peppermint schnapps, followed by a couple of sips from a bottle of peppermint schnapps.

and asked him to "[t]ake care of my kids." Police officers who arrived at the scene approximately fifteen minutes after the stabbing, observed the defendant running away and falling several times. When they arrested the defendant, the police officers noted that his eyes were red, his speech slurred and that he had a strong odor of alcohol about him. One officer described him as being "very much" intoxicated at the time. The defendant testified that due to the alcohol he consumed that day he was drunk and "couldn't think straight" and that it was "hard to explain the effect" of the LSD and schnapps but that he felt "run down . . . tingly [and] numb." While being transported to the police station and during his booking, the defendant stated that he was trying to protect his children, that Sour had threatened them and that he had not intended to hurt Sour. On cross-examination, the defendant testified that he knew where to get his knife and recalled running up the stairs of the neighbor's house, knocking on the door and stabbing Sour. He further testified that he knew whom he was after, was not confused as to whom he was going to attack, and knew that he stabbed Sour.

Following a proper instruction on first degree murder and the capacity of proof of intoxication to reduce that crime to murder in the second degree, the judge gave the following instruction:

> "Now, the malice required to be proof of second degree murder is somewhat different from the malice necessary for first degree murder. The issue of the defendant's intoxication, if you find that he was, and if it so impaired his capacity to intend the death or grievous bodily injury to a person is not applicable to the malice that must be proved by the Commonwealth beyond a reasonable doubt in murder in the second degree. That malice — that is, murder in the second degree malice may be inferred by the jurors upon proof beyond a reasonable doubt that in the circumstances known to the defendant a reasonably prudent person would have known that according to common experience there was

> a plain and strong likelihood that death would follow from the contemplated act."

The defendant argues that this instruction incorrectly states (1) that the malice element in second degree murder differs from that in first degree murder and is limited to third prong malice,[2] and (2) that intoxication cannot be a mitigating factor in third prong malice.

The Commonwealth concedes that this "unique instruction," see *Commonwealth* v. *Sires*, 413 Mass. 292, 294 n.1 (1992), is incorrect, but contends that it did not create a substantial risk of a miscarriage of justice. Contrary to the judge's instructions, "[t]here is no distinction between murder in the first degree and murder in the second degree based on a difference in the element of malice." *Commonwealth* v. *Sires, supra* at 296. Nevertheless, the judge's misstatement, "[v]iewed solely as an instruction on murder in the second degree . . . was not harmful to the defendant" solely because it omitted two definitions on which the jury might have relied to find malice. *Commonwealth* v. *Sires, supra* at 297.

The portion of the challenged instruction dealing with the effect of intoxication was correct at the time it was given. See *Commonwealth* v. *Blake*, 409 Mass. 146, 155 (1991); *Commonwealth* v. *Sullivan*, 29 Mass. App. Ct. 93, 99 (1990). In *Commonwealth* v. *Sama*, 411 Mass. 293, 298-299 (1991), decided after the trial of this case, the court stated that "[u]nder the third prong of malice, the Commonwealth must establish the guilty *knowledge* of the defendant beyond a reasonable doubt, and evidence of a defendant's intoxication should be considered by the jury . . ." and held that

---

[2]"Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm. However, proof of such an intent is not required because malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987) (citation omitted). "This latter method of establishing malice is sometimes referred to as the third prong of malice." *Commonwealth* v. *Moore*, 408 Mass. 117, 134 n.9 (1990).

"evidence of a defendant's voluntary intoxication is a factor for the jury to consider whenever the Commonwealth bears the burden of establishing the knowledge of the defendant beyond a reasonable doubt." See *Commonwealth* v. *Souza,* 34 Mass. App. Ct. 436, 443 (1993). In the factual context of this case, "the Commonwealth had the burden of demonstrating that the defendant knew that he was stabbing the victim with a knife . . . . " *Commonwealth* v. *Sama, supra* at 298.

Even with the benefit of a correct instruction on the third prong of malice, a rational jury would not have harbored a reasonable doubt that the defendant knew that he was stabbing Sour with a knife. The issue is not whether the defendant was intoxicated. Of that, the evidence is abundant. Rather, the question is whether there is evidence of the defendant's debilitation "bearing on his ability to possess meaningful knowledge of the circumstances at the time of the victim's death." *Commonwealth* v. *Sama, supra* at 299. See *Commonwealth* v. *Souza, supra* at 440-443. Not only was there ample evidence of the defendant's conduct and statements from which jurors could infer the requisite knowledge, see *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977), but the defendant, by his own testimony, unequivocally admitted that at the time of the attack, he was not confused, knew whom he was after and knew that he had stabbed Sour. Significantly, there was no testimony from an expert "such as is almost always included in such cases that the defendant's condition prevented him from having the knowledge required for guilt of murder." *Commonwealth* v. *Souza, supra* at 443 (citation omitted). Moreover, his testimonial description of the physical effects of his consumption of alcohol and LSD and that he "couldn't think straight" does not rise to the level of a lay description of debilitation sufficient to create a jury issue. Contrast *Commonwealth* v. *Sama, supra* at 299; *Commonwealth* v. *Souza* at 442 & n.5 (describing the underlying facts in *Commonwealth* v. *Mc-Lean,* 32 Mass. App. Ct. 978 [1992], where "the defendant testified that he was severely intoxicated from drinking eigh-

teen to twenty beers and smoking cocaine, causing him to 'freak out' and 'black out' while strangling the victim").

There is no merit in the defendant's contention that the judge failed adequately to distinguish murder from manslaughter. Early in his instructions, the judge stated that "voluntary manslaughter . . . is a homicide committed without malice," and emphasized that the absence of malice distinguishes this crime from murder. His reading from G. L. c. 265, § 13, and his detailed treatment of the capability of provocation "to reduce an unlawful killing from murder to manslaughter" adequately underscored the distinction between the crimes. Contrast *Commonwealth* v. *Boucher*, 403 Mass. 659, 661, 663 (1989).

Lastly, we reject the defendant's claim that one confusing sentence relating to the burden of proof on the issue of provocation created a substantial risk of a miscarriage of justice. Read as a whole, the instructions did not dilute or shift the Commonwealth's burden of proof. See *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-233 (1980).

*Judgment affirmed.*