## COMMONWEALTH *vs.* CHARLES C. DELANEY, THIRD.

Plymouth. February 9, 1994. - September 20, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Homicide. Malice. Intent. Mental Impairment. Practice, Criminal*, Instructions to jury.

At a first degree murder trial in which the defendant was convicted of murder in the second degree, the judge erred in failing to give the defendant's requested instruction, with respect to the third prong of malice, that the jury should consider the nature and extent of the defendant's knowledge at the time of the killing and, in that regard, they should consider the evidence of the defendant's mental impairment; further, the judge erred in giving instructions suggesting that the issue of the defendant's knowledge and the relevance of the defendant's mental impairment to the issue were not appropriate considerations for the jury [659-666]; however, there was no substantial risk of a miscarriage of justice, where, even if the jury had been correctly instructed on that point, the verdict would not have been more favorable to the defendant [666-668].

INDICTMENT found and returned in the Superior Court Department on December 2, 1986.

Pretrial motions to suppress evidence were heard by *John D. Sheehan*, J., and the case was tried before *R. Malcolm Graham*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Donald A. Harwood* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. A jury found the defendant guilty of murder in the second degree, and the judge imposed a sentence of life imprisonment. The jury did not specify the theory of malice on which the verdict was based. The Appeals Court

affirmed the conviction. 34 Mass. App. Ct. 732 (1993). The defendant applied to this court for further appellate review with respect to whether the trial judge committed reversible error: (1) by not instructing the jury, as requested by the defendant, that, with respect to the "third prong" of malice, see *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987), the jury should consider the extent of the defendant's knowledge of the circumstances at the time of the killing and, in that regard, should consider the evidence of his mental impairment; (2) by excluding from evidence military intelligence reports and testimony about those reports which were offered to prove that the defendant suffered from posttraumatic stress disorder at the time of the killing; (3) by excluding from evidence the defendant's out-of-court statements to family members and friends "long before the fatal incident" regarding the impact on the defendant of his military service; and (4) by excluding evidence of the victim's "prior misconduct which was offered in support of [the defendant's] defense that he suffered a 'flashback' at the time of the killing resulting from post traumatic stress disorder." We granted the defendant's application. We now affirm the judgment.

The jury could have found the following facts. On April 30, 1986, the defendant strangled to death his former wife, Pom Song Delaney, and buried her body in a deep hole that he had previously dug in his backyard. On October 28, 1986, police officers conducting an investigation into Pom Song's disappearance questioned the defendant at his place of employment. The defendant told the police that he and Pom Song had argued immediately before her death and that she had been hitting him so he got some rope intending to tie her hands. The defendant claimed that then he experienced a "blackout" and a "flashback," and that his next memory was of seeing Pom Song dead on the floor. The defendant gave the police substantially the same information when he was interviewed by them later the same day at the police station.

The defendant did not testify at the trial, but he presented evidence through other witnesses, including an expert, from which the jury would have been warranted in finding that,

when the defendant strangled Pom Song, he was suffering from a blackout or flashback due to posttraumatic stress caused by his military service. The evidence was that, as a result of this condition, the defendant believed that he was garroting an enemy soldier or training other soldiers to use a garrotte when in fact he was strangling Pom Song.

The defendant requested the judge to instruct the jury on third prong malice as follows:

> "42.) You must consider all the evidence that you have heard regarding the mental condition of Mr. Delaney when you are deciding the question of whether or not the Commonwealth has proven to you beyond a reasonable doubt that he acted with malice aforethought on April 30, 1986. Malice may be shown to you in one of three ways: (1) by proof that Mr. Delaney, without justification or excuse, intended to kill Pom Song Delaney; (2) by proof that he intended to do her grievous bodily harm; (3) or by proof that *in the circumstances known to Mr. Delaney*, a reasonably prudent person would have known of the plain and strong likelihood that death would follow his contemplated act" (emphasis in the original).

> "43.) You must consider, when deliberating on this question of malice, whether on April 30, 1986, because of his mental condition, Mr. Delaney formed the specific intent to kill or cause grievous bodily harm. *You must also consider his mental condition in determining what circumstances were known to him on that day. The issue is not what circumstances would have been known to a reasonable person at the time of the alleged act, but what circumstances were known to Mr. Delaney, given his mental condition. Only after you have considered what reality Mr. Delaney was able to appreciate do you turn to the question of whether a reasonable person would have known that the death of a person would follow from his actions.* Note that you may

find that Mr. Delaney's mental condition was such that
he did not act with malice aforethought *even if* you
should find that his mental condition does not rise to the
level of insanity. To sum up this point, then, if you find
that Mr. Delaney's mental condition on April 30, 1986
was such that he did not form the specific intent to kill
with malice aforethought, as I have defined that phrase
for you, you cannot find him guilty of murder, either in
the second degree or in the first degree. He may, how-
ever, be found guilty of manslaughter. *Commonwealth
v. Grey*, 399 Mass. 469 (1987)." (Emphasis added.)

The judge did not give the requested instructions. Instead,
by giving the following instructions on malice, the judge at
least implied that there is no subjective component of third
prong malice. First, as part of his discussion of murder in the
first degree based on deliberate premeditation, the judge told
the jury:

"Malice aforethought refers to a frame of mind that in-
cludes not only anger, hatred or revenge, but also any
other unlawful or unjustifiable motive. The Common-
wealth is not required to show that the defendant had
an actual intent to kill in order to prove the elements of
malice. *Malice may be proven by evidence of any unex-
cused intent* to kill through devices such as bodily harm
or *to do an act whereby there is some plain strong like-
lihood that death or grievous bodily harm will follow.*
Whether a killing is actually committed with malice
aforethought is determined from the nature and quality
of the act that attends the killing. If the circumstances
attending the killing disclose that the death follows
from a purposeful selfish wrongful motive as distin-
guished from the frailty of human nature, then there is
malice aforethought. The malice may be inferred from
the intentional use of a deadly weapon. Of course you
may decide not to infer malice aforethought if the evi-

dence put before you does not support that inference."
(Emphasis added.)

Next, as part of the instruction on first degree murder based
on extreme atrocity or cruelty, the judge instructed that:

"Malice aforethought as I said refers to a frame of
mind that includes not only anger or hatred and revenge
but any other unlawful or unjustifiable motive. The
Commonwealth is not required to show that the defend-
ant had an actual intent to kill in order to prove the
element of malice aforethought. Malice may be proven
by evidence of any unexcused intent to kill, to do griev-
ous bodily harm, or to do an act creating a plain and
strong likelihood that either death or grievous harm
would evolve."

Finally, as part of the instruction on murder in the second
degree, the judge instructed that:

"As I explained earlier, malice aforethought may be
proven by evidence of any unexcused intent to kill, to do
grievous bodily harm or to do an act creating a plain
and strong likelihood that death or grievous injury
would likely follow."

The judge next gave the *McHoul* instruction, *Common-*
*wealth* v. *McHoul*, 352 Mass. 544 (1967), on the issue of
criminal responsibility. Following those instructions, the
judge instructed on mental impairment:

"Now, in this case you have heard evidence relative
to the issue of whether or not the defendant was suffer-
ing from the mental impairment at the time of the ac-
tion in question, when they were allegedly performed.
In considering the question of guilt or innocence of this
defendant, of the charge of first degree murder on the
basis of deliberate premeditation and also extreme
atrocity or cruelty, and on second degree murder, if you

the jury have a reasonable doubt as to whether there was impairment of the defendant's mental processes, that falls short of insanity, you may consider whether or not such impairment of the defendant's mental processes precluded him from being able to deliberately premeditate or form the specific intent that is required for malice aforethought in both first and second degree murder."

Early on the second day of deliberations the jury asked the judge to clarify the various potential verdicts. In response to this question the judge again instructed on malice as follows: "The second element is malice aforethought. That may be proven by evidence of any unexcused intent to kill, to do grievous bodily harm, or an act creating a plain and strong likelihood that either death or grievous bodily harm would follow." The judge also reinstructed on mental impairment, saying:

"Now, I might also add that in considering the guilt or innocence of the defendant on the charge of first degree murder on the basis of deliberate premeditation and also extreme atrocity or cruelty, and second degree murder if you have a reasonable doubt as to whether there was impairment of the defendant's mental processes that falls short of insanity, you may consider whether or not such impairment of the defendant's mental processes precluded him from being able to deliberately premeditate and/or form a specific intent for malice aforethought in both first or second degree murder. In other words, you're saying there, if you find there is some impairment that falls short of insanity as the legal definition is, then you can't have malice aforethought which brings it down to manslaughter."

The defendant did not object to the judge's failure to instruct the jury, pursuant to the defendant's precharge request, that, with respect to the third prong of malice, they should consider the extent of the defendant's knowledge of

the circumstances at the time of the killing and, in that regard, they should consider the evidence of his mental impairment. Also, the defendant did not object that the judge's instructions on third prong malice contained an erroneous implication that the defendant's knowledge of the circumstances and his mental impairment were irrelevant to the third prong malice issue. Therefore, we examine the instructions to determine whether, by omission or commission, they were erroneous and, as a result, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Bowler*, 407 Mass. 304, 308 (1990). *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986). *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). We conclude, contrary to the conclusion of the Appeals Court, 34 Mass. App. Ct. at 734-735, that the judge erred in failing to give the requested instructions and in giving instructions that suggested that, with respect to third prong malice, the defendant's knowledge of the circumstances when he strangled Pom Song and the relevance of the defendant's mental impairment to that issue were not appropriate considerations for the jury. We also conclude, however, that there is no substantial risk that the jury's determination that the defendant was guilty of murder in the second degree constitutes a miscarriage of justice.

In *Commonwealth* v. *Sama*, 411 Mass. 293, 297 (1991), the defendant requested the judge to instruct the jury relative to malice that they should "consider the evidence of the defendant's intoxication when they deliberated as to whether he possessed sufficient knowledge of the circumstances to realize that, by his actions, he created a plain and strong likelihood that death or grievous bodily injury would result therefrom. . . . The judge refused to give this instruction and, in fact, charged the jury to the contrary, specifically directing them not to consider the effect of the defendant's intoxication on his ability to possess malice aforethought under this theory." In *Sama*, we concluded that the jury instructions constituted reversible error. *Id.* at 301. We explained:

"When deliberating as to whether the Commonwealth has proved the knowledge aspect of malice aforethought under the third prong, a jury should consider: (1) the nature and extent of the defendant's knowledge of the circumstances at the time he acted; (2) whether, in the circumstances known by the defendant, a reasonably prudent person would have recognized that the defendant's conduct would create a plain and strong likelihood of death or injury. In order to establish the third prong of malice in this case, the Commonwealth had the burden of demonstrating that the defendant knew that he was stabbing the victim with a knife and that a reasonably prudent person, although not necessarily the defendant, would recognize that such conduct carried with it the risk of death or serious bodily injury. . . . The defendant presented credible evidence of debilitating intoxication bearing on his ability to possess meaningful knowledge of the circumstances at the time of the victim's death. . . . The jury should have been allowed to consider this testimony when deciding whether the Commonwealth proved the defendant's guilty knowledge beyond a reasonable doubt. Without more, we hold that evidence of a defendant's voluntary intoxication is a factor for the jury to consider whenever the Commonwealth bears the burden of establishing the knowledge of the defendant beyond a reasonable doubt." (Footnote omitted.)

*Id.* at 298-299.

In the present case, too, in connection with their determination whether the Commonwealth had proved the knowledge aspect of malice aforethought under the third prong, the jury should have had the benefit of instructions that they should consider the nature and extent of the defendant's knowledge of the circumstances when he acted and, in that regard, assess the evidence bearing on the defendant's mental impairment. See *Commonwealth* v. *Starling*, 382 Mass. 423, 428 (1981) ("Malice aforethought simply does not require

any actual intent to kill or to do grievous bodily harm, or any foresight of such circumstances, if the jury thought them obvious *in the circumstances known to the defendant* [emphasis added]). The jury should have been instructed, too, that with respect to the third prong of malice the question for them to decide was whether, in the circumstances known to the defendant, a reasonably prudent person would have recognized that the defendant's intentional act would create a strong and plain likelihood of death or injury. The fact that the present case involves evidence of mental impairment other than intoxication makes no significant difference. See *Commonwealth v. Grey, supra* at 470-471 ("Just as we permit evidence of a defendant's alleged intoxication to be considered when his specific intent to kill is in issue [*Commonwealth v. Henson*, 394 Mass. 584, 593 (1985)], we should permit the jury to consider evidence of mental impairment at the time of the crime in deciding whether the Commonwealth has proved the defendant's specific intent").

The Commonwealth argues that *Sama* does not control this case because, in *Sama*, the judge explicitly forbade the jury to consider the effect of the defendant's intoxication on his knowledge of the circumstances surrounding the killing. We reject that argument. The principle announced in *Sama* is not restricted to cases in which the jury are explicitly instructed not to consider the defendant's mental impairment in connection with the third prong of malice. The *Sama* principle applies as well to implicit instructions and to a judge's failure to instruct the jury as requested in this case. The instructions in this case do not satisfy the rule laid down in *Sama*.

We turn, then, to the question whether, on account of the identified error, a substantial risk of a miscarriage of justice exists. We do not know the theory or theories of malice on which the jury based their verdict. Therefore, we shall assume, favorably to the defendant, that the guilty verdict was based on the third prong of malice and that the jury wrongly believed that the defendant's mental impairment short of insanity and the limited extent of his knowledge of the circum-

stances surrounding the killing were irrelevant to their determination of third prong malice. We shall assume that the jury incorrectly understood that, to establish third prong malice, the Commonwealth needed only to prove that the defendant intended the act by which Pom Song died, without specifically intending to injure or kill her, and that a reasonably prudent person would have recognized that in all the circumstances, whether known by the defendant or not, such conduct would create a plain and strong likelihood of Pom Song's injury or death. Given those assumptions, the question is whether there is a substantial risk that the jury's verdict would have been more favorable to the defendant had the jury been instructed that third prong malice requires that a reasonably prudent person would have recognized that, *in the circumstances known to the defendant*, the defendant's conduct would create a plain and strong likelihood of injury or death.

We conclude that there is no such risk. Although the defendant does not explicitly admit that he knew he was strangling anyone, and the record does not show such an admission, the thrust of the defense at trial was that, when the defendant strangled Pom Song, he thought he was strangling an enemy in combat or that he was teaching friendly soldiers how to do so. We think it is highly probable that, if the jury had been properly instructed, they would have found that the defendant knew he was strangling another person, although perhaps mistaken as to the identity of that person and the justification for his act. We think it is also highly probable that the jury would have found that a reasonably prudent person would have recognized a plain and strong likelihood of injury or death as a consequence of strangling. We conclude that, if the jury had been properly instructed, and if they did not find first or second prong malice, they would have found third prong malice. Our conclusion in this regard is supported by the fact that, after being instructed that, if they were to find that "there is some impairment that falls short of insanity," a verdict of manslaughter would be permissible, the jury did not find manslaughter. A fair inference

is that the jury did not find a mental impairment short of insanity. We are aware, too, that the jury would have been warranted in finding that the defendant had dug Pom Song's grave two days before he killed her.

It is immaterial to third prong malice whether the defendant knew that his victim was Pom Song and not an enemy soldier. Of course, if, as a result of mental disease or defect, the defendant was unable to appreciate the wrongfulness of his act when he strangled Pom Song because he thought his victim was an enemy in war, he would not have been criminally responsible for his conduct. However, after receiving proper instructions from the judge on that aspect of the law, the jury found that the defendant was criminally responsible.

We granted further appellate review in this case primarily to consider whether reversible error had occurred with respect to the trial judge's instructions to the jury concerning third prong malice in murder. We have concluded that there was no reversible error in that regard. In his application for further appellate review, the defendant requested our review of certain evidentiary rulings which we have identified early in this opinion. We have considered the parties' arguments relative to those issues and we agree with the Appeals Court, 34 Mass. App. Ct. at 740-741, that the defendant's contentions lack merit.

*Judgment affirmed.*